# Ware. *et al.* v. Mobile County.

*Action to Recover License Tax.*

(Decided May 8th, 1906.  41 So. Rep. 153.)

1. *License; Dealers in Futures; Interstate Commerce.*—A broker, engaged in buying and selling cotton and grain for future delivery, taking the orders to be executed on the New York or New Orleans exchange, the customer, at the time, depositing with the broker, or his agent, money as margins to protect the broker against loss in the event the market was adverse to the customer; the broker furnishing the customer with a memorandum reserving the right to close the transaction when the margin deposited was exhausted, and to settle the contract in accordance with the customs of the exchange on which the order was placed, the order being transmitted by wire by the agent to the broker's office in New York or New Orleans, is subject to the tax imposed by General Acts 1903, p. 207, imposing a tax upon the business of buying and selling futures for speculation; and the contract so entered into was not interstate commerce.

2. *Same.*—There being no stipulation in the contract requiring the seller to ship the cotton from any given point, shipments made under the contract from without the state to a point therein, was not rendered interstate commerce by the contract, but by the subsequent independent act of the seller, and the shipment in that event would not become interstate commerce until the cotton had commenced to be transported, so the fact that the contract provided for its discharge by a shipment of cotton, in some instances, is of no consequence.

APPEAL from Mobile Circuit Court.
Heard before Hon. SAMUEL B. BROWNE.
This suit was commenced by Mobile county, and

sought to recover of the defendants license tax for the year 1903 of $250 for engaging in the business of buying and selling futures on commission for other persons in the city of Mobile, in the county of Mobile. The pleas were: (1.) The general issue. "(2.) Actio non, because they say that they paid the plaintiff the amount due for engaging in the business of buying and selling futures for other persons in the city of Mobile, such purchases and sales being made outside of the state of Alabama, and did obtain a license so to do prior to the passage of the act of the legislature of Alabama, approved——— day of March, 1903, fixing said license at $500 to be paid the state of Alabama and $250 to Mobile county, and that they did engage in and carry on the business they were authorized to do by said license so obtained by them as aforesaid; and the defendants aver that the license so obtained by them has never been revoked or canceled by the state of Alabama—all of which these defendants are ready and willing to verify. (3) Actio non, because they say that their agent in the city of Mobile, in the state of Alabama, receives orders from the customers of the defendants to buy and sell cotton futures upon the New York cotton exchange, in the city of New York, in the state of New York, said cotton so bought or sold to be received or delivered in said city of New York, in the state of New York; said agents of defendant sending said orders to defendant in the city of New York by telegram. And the defendants further aver that said agent of the defendant in the city of Mobile, in the state of Alabama, also receives orders from the customers of the defendants for the purchase and sale of future cotton upon and in the New Orleans cotton exchange, in the city of New Orleans, in the state of Louisiana. All of said cotton so bought or sold to be received or delivered in said city of New Orleans in the state of Louisiana. That the said agent of the defendants in the city of Mobile, in the State of Alabama, telegraphed said orders to the agent of the defendants in the city of New Orleans, in the State of Louisiana, who executes the same upon and in said cotton exchange." And the same alle-

gations made as to future cotton are made as to grain and other things for future delivery. "(4) The defendant amends the second and third plea by inserting in the place thereof the following: And for further answer to each count of the complaint defendants say that the only business which they did in the state of Alabama, in the city of Mobile, during the time charged in the complaint, was interstate commerce business, and that they could not be required by the state of Alabama, or Mobile county, in said state, to pay a license for doing such business because the levy of such license tax on such business was an unlawful interference with interstate commerce business, and in violation of article 1, § 8, par. 3, of the constitution of the United States."

The cause was tried on the following agreed statement of facts: "During the whole of the year 1903 defendants had an office in the city of Mobile, in the county of Mobile, in the state of Alabama. They also had offices in the city of New York, in the state of New York, and in the city of New Orleans, in the state of Louisiana, and in the city of Chicago, in the state of Illinois, each of which offices were connected by private telegraph wires with the said Mobile office. Said Mobile office was in charge of their agent, one Robbins, and was engaged in the business of buying and selling cotton futures for delivery on commission for the public generally and for special customers, said business being conducted in the following way, and in no other way: They would undertake, through their agent, to buy or sell a cotton future contract for a customer in the cotton exchange in New York or in New Orleans, as he might select; he making at the time a deposit of money with his order as a margin to protect them against loss in making such transaction for him. When the customer gave the order to Ware & Leland either for a sale or a purchase of a future contract, it was not usual for anything to be said between them about a natural delivery of the cotton; but when the transaction was commenced by a purchase or sale of the cotton, Ware & Leland would immediately furnish the customer a memorandum thereof partly written and partly printed, upon which the fol-

[Ware, *et al.* v. Mobile County.]

lowing stipulations were printed: 'On all marginal business we reserve the right to close transactions without further notice when margins are about exhausted, and to settle contracts in accordance with the rules and customs of the exchange on which the order is placed; it being understood and agreed in all trade that actual delivery is contemplated.' And: 'All purchases and sales made by us for you are made in accordance with and subject to the rules, regulations, and customs of the exchange on which the order is placed, and the rules, regulations, and requirements of the board of managers of said exchange, and all amendments that may be made thereto.' Such agent would thereupon transmit such order by their private telegraph line to the defendants' office in the city, without the state of Alabama, selected for such transaction. Such order would be thereupon executed by defendant by the purchase or sale, as directed, of a future cotton contract for such customer in the cotton exchange of the city to which such order was sent, and subject to the rules and regulations of such cotton exchange, which rules and regulations may be introduced in evidence by the defendants in this cause. Said contract would be held by defendant for such customer until he ordered the same closed up, when they would sell or buy another cotton contract against it, as might be necessary to cover the same or close it out, or receive or deliver the cotton on said contract. If a profit was made on the transaction, defendants remitted it to its agent in Mobile, who paid it over to the customer. If a loss was made it was taken by the agent out of the customer's margin, or, if that was insufficient therefor, the customer was called on for the balance. Said business was done on a commission paid defendants by the customer. No actual delivery of cotton or grain was ever made on such contract, except in a few instances, when such deliveries were made where the contract was executed, to-wit, in New York, or in New Orleans, or in Chicago. When any such delivery of cotton was made to defendant for the customer on a purchase by him, it was held by defendant for account of the customer at the place of delivery, either in New York or in New Orleans, until ordered sold by the customer, and was then

sold by them for the account of the customer, and the proceeds accounted for by them to such customer. When they made delivery of cotton on a sale of futures made by them for such customer, the cotton was shipped by the customer for whom such sale was made from Alabama to the place of sale, and there delivered through defendants to the buyer. A similar future grain business was done by defendants at their said office in Mobile, Ala., for customers, through their office in Chicago, in the state of Illinois; said orders being executed on the Chicago, Ill., board of trade, and subject to its rules and regulations, which contemplated and provided for the actual receipt or delivery of grain bought or sold therein, such delivery to be made in Chicago, Ill. During the whole year 1903 said city of Mobile, Ala., was a city of more than 20,000 inhabitants. Defendant paid to plaintiff a license tax of $100 for doing such business in said city for the year 1903, which payment was made prior to the 4th day of March, 1903. They have not paid any further license to plaintiff for doing such business in said year. It is agreed between the parties to this cause that if, upon the aforegoing facts and such other evidence as may be introduced, the business so done by defendants was interstate commerce business, and a license tax thereupon would be an unlawful interference with interstate commerce business, and in violation of article 1, § 8, par. 3, of the constitution of the United States, then defendants are entitled to a verdict."

B. B. BOONE, for appellant.—The business in which defendant was engaged was interstate commerce business.—*The Western Union Tel. Co. v. Chamblee*, 122 Ala. 428; *Clews v. Jamieson*, 182 U. S. 481; *Bibb v. Allen*, 149 U. S. This being true, the state has no power to tax.—*Stratford v. City Council of Montgomery*, 110 Ala. 619; *Stockard v. Morgan*, 185 U. S. 27; *Champion v. Ames* (Lottery case), 188 U. S. 521; *State v. Agee*, 83 Ala. 110.

R. H. and N. R. CLARKE, for appellee.—The contract does not affect interstate commerce.—*Hooper v. California*, 155 U. S. 648; *Hopkins v. United States*, 171 U. S.

578; *Paul v. Virginia,* 8 Wall. 168; *Alexander v. Georgia,* 10 L. R. A. 859; *Embry v. Jemison,* 131 U. S. 336; *Irwin v. Williams,* 110 U. S. 499; *Ficklin v. Shelby* County, 145 U. S. 1. If the business was in some instances within interstate commerce and in others not, appellants were not exempt from taking out license by the mere fact that a part of their business was interstate commerce.—*Osborn v. State,* 25 L. R. A. 120; s. c. 164 U. S. 650; *Kehrer v. Stewart,* 197 U. S. 60.

TYSON, J.—Subdivision 40 of the act "to better provide for the revenue of the state" (Gen. Acts 1903, p. 207) reads as follows: "For each person engaged in the business of buying and selling futures for speculation or on a commission either for themselves or for other persons, and each place of business commonly known as cotton exchanges, or stock exchanges and sometimes called 'bucket shops' in towns and cities of twenty thousand inhabitants or more, five hundred dollars; in all other towns and cities, two hundred and fifty dollars; ;but this shall not be held to legalize any contract which would otherwise be invalid." It appears from the agreed statement of facts, upon which the case was tried, that during the whole of the year 1903 defendants conducted the business in the city of Mobile, a city of more than 20,000 inhabitants, of buying and selling cotton for future delivery on commission, for the public generally and for special customers. The local agent in the city would take the order of those desiring to buy or sell future cotton contracts, which would be executed by defendants upon the New York or New Orleans cotton exchange; the customer at the time of giving the order, depositing with the local agent a sum of money as margin to protect the defendants against loss in the event the course of the market was adverse to the side of the customer. When the order was given, it was not usual to say anything about an actual delivery of the cotton; but defendants furnished the customer with a memorandum reserving the right to close the transaction when the margin deposited was about exhausted and to settle the contract in accordance with the rules and customs of the exchange on which the order was placed. This

memorandum also contained the stipulation that "in all trades actual delivery is contemplated," and the further stipulation that "all purchases and sales made by us for you are made in accordance with and subject to the rules, regulations, and contracts of the exchange on which the order is placed," etc. The order of the customer was then transmitted by wire by defendants to their office in the city of New York or New Orleans, where it was executed. The contract thus purchased or sold, as the case may be, was held by defendants for the buyer or seller, their customer, until the same was ordered closed out, which was done by buying or selling another contract against it, as might be necessary to cover or close it out, or receive or deliver cotton on the contract. If a profit was made in the transaction, it was remitted by defendants from their office where made to the Mobile office and there paid over to the customer. If a loss was incurred, it was taken by the Mobile office out of the customer's margin, and, if that was insufficient to pay the loss, the customer was called on for the balance. No actual delivery of cotton was ever made on such contracts, except in a few instances, and then at the place of its execution, to-wit, New York or New Orleans. When the cotton was delivered on a contract of purchase, it was held by defendants for the purchaser, as his agents, until they were ordered to sell it. When the delivery was made upon a contract of sale, the seller would ship the cotton from Alabama to New York or New Orleans, the place of delivery, and defendants, as his agents, would there deliver it to the buyer.

The only question presented for our consideration is whether the business thus shown to have been engaged in by defendants was interstate commerce, and therefore not subject to the license tax sought to be collected of them; for clearly, if the business is not subject to be taxed, although the one for which defendants are here sought to be made liable may be characterized as an occupation tax, there can be no recovery in this case.— *Stratford v. City Council of Montgomery,* 110 Ala. 619, 20 South. 127. But the defendants' business of making contracts of buying and selling future cotton for their customers is not interstate commerce. Indeed, these

contracts are not articles of commerce at all.—17 Am. & Eng. Ency. Law (2d Ed.) p. 61. As was said by the supreme court of the United States in *Paul v. Virginia,* 8 Wall. 183, 19 L. Ed. 357, in speaking of policies of insurance: "These contracts are not contracts of commerce in any proper meaning of the word. They are not subjects of trade and barter, offered in the market as something having an existence and value independent of the parties to them. They are not commodities to be shipped or forwarded from one state to another and then put up for sale. They are like other personal contracts between parties which are completed by their signatures and the transfer of the consideration. Such contracts are not interstate transactions, though the parties may be domiciled in different states. "See, also, *Hooper v. California,* 155 U. S. 648, 15 Sup. Ct. 207, 39 L. Ed. 297; *N. Y. Life Ins. Co. v. Cravens,* 178 U. S. 389, 20 Sup. Ct. 962, 44 L. Ed. 1116. This principle, we think, clearly controls in this case, and its application to the facts makes the defendants liable. The contracts entered into by defendants for their customers, if discharged by the payment of differences in the market values, though executed in another state by and through their agents, the defendants, are clearly not articles of commerce; and the transaction was not different from one that the customer himself in person executed the order on the exchange in New York or New Orleans. Nor is it of consequence, in so far as the question here is involved, that the contracts were sometimes discharged by the delivery of the cotton. While it is true the cotton may have become an article of interstate commerce, it never became an article of trade from one state to another until it begun to move, and this movement did not begin until the cotton was shipped or was started for transportation from one state to the other.— *Kidd v. Pearson,,* 128 U. S. 25, 9 Sup. Ct. 6, 32 L. Ed. 346.

There was no stipulation shown in the agreed statement of facts which required the seller to ship cotton from any point. He was at liberty to acquire the cotton in the market of delivery or elsewhere; hence a shipment from one state to another for delivery under the contract would not be interstate commerce by virtue

of the contract, but by subsequent and independent act
of the seller, and the shipment in that event would not
become interstate commerce until the cotton had com-
menced to be transported. The case of *Stratford v. City
Council, supra*, relied upon by appellants, clearly has no
application. In that case Stratford was a broker, repre-
senting several non-resident wholesale dealers in grain
and provisions who lived and carried on their business
in other states, and every order for goods from local
merchants received or obtained by him was forwarded
to his principal, subject to the approval of such princi-
pal; and if the order was accepted by the non-resident
dealer, he shipped the goods from his place of business
to the purchaser, who did business in the city of Mont-
gomery.

Affirmed.

WEAKLEY, C. J., SIMPSON and ANDERSON, JJ., concur.