STATE *ex rel. v.* SOUTHERN OIL SERVICE, INC.

(*Nashville,* December Term, 1938.)

Opinion filed Feb. 18, 1939.

234

Lewis S. Pope and J. Whitworth Stokes, both of Nashville, for the State.

Bass, Berry & Sims, McConnico, Hatcher & Waller, and Farmer, Denney & Leftwich, all of Nashville, for appellee.

Mr. Justice Chambliss delivered the opinion of the Court.

The State upon the relation of certain of its fiscal officers brought this suit against the Southern Oil Service, Inc., to recover gasoline taxes alleged to be due for the period from January 8, 1931, to and including August, 1936. Tax liability is alleged to result from sales of gasoline made by the defendant to Davidson County during the period covered by the suit. At the hearing counsel for the State conceded that there was no liability prior to the passage of Chapter 130, Public Acts of 1933. The defendant denied all liability, insisting (1) that the transactions in question were interstate commerce immune from State taxation, (2) that the transactions were expressly excluded from the operation of the taxing statute by the provision that no gasoline shall be included in the measure of the tax unless it "shall have previously come to rest within the meaning of the Inter-

state Commerce clause of the Federal Constitution," section 2, and (3) that the State is precluded from seeking the recovery herein sought upon principles of equitable estoppel.

The Chancellor, holding that the sales sought to be taxed were interstate commerce, dismissed the bill without a consideration of the other defenses. The State has appealed. The facts are as follows:

From time to time Davidson County purchased gasoline for use by its county highway commission upon competitive bids taken by its purchasing commission. The purchasing commission is the only agency authorized to bind the county in such purchases as are here involved, but the requisitions and specifications for these purchases were prepared by Mr. J. C. Akers, the county engineer.

Prior to buying any of the gasoline in question, Mr. Akers consulted the county attorney, who advised him that no State tax would be imposed if the county purchased gasoline to be shipped to it from a refinery outside of Tennessee. Mr. Akers informed Mr. Abeles, the president of Southern Oil Service, Inc., that any gasoline bought by the county would have to be shipped from outside the State direct to Davidson County. The county engineer gave similar instructions to other prospective bidders. Mr. Abeles then submitted the matter to his attorney, who conferred with representatives of the State Department of Finance and Taxation and these officers agreed with the attorney that under the proposed method of handling purchases of gasoline by Davidson County there would be no tax liability.

Thereafter, the Southern Oil Service, Inc., submitted bids in its own name and in many cases procured orders for gasoline. The bids submitted did not include the

gasoline tax and, in most instances, the amount of the bid was actually less than the tax itself. Neither the invitations to bid, nor the written contracts of purchase, specified that the gasoline bought was to be shipped from outside of Tennessee, but in every instance the gasoline was shipped in interstate commerce direct to the purchaser, Davidson County, from refineries located outside of Tennessee.

During the period in controversy the purchasing commission of Davidson County was composed of three persons and during this period seven individuals served as members of it. One of these, and also the secretary of the commission (not a member), testified that in accepting the bids of the Southern Oil Service, Inc., they did not know an interstate shipment of gasoline was contemplated.

We shall first consider the defense upheld by the Chancellor that the transactions here involved were interstate commerce.

The applicable principles of law are announced in decisions of the Supreme Court of the United States with respect to the commerce clause of the Federal Constitution, U. S. Const. Art. 1, sec. 8, cl. 3. For the purposes of the present suit these principles are relatively few and simple and only a bare statement of them is essential.

■ A State cannot tax interstate commerce, either by levying a tax upon the business which constitutes such commerce, or by taxing the privilege of engaging in it. *Cooney* v. *Mountain States Teleph. & Teleg. Co.*, 294 U. S., 384, 55 S. Ct., 477, 79 L. Ed., 934; *Minnesota* v. *Blasius*, 290 U. S., 1, 54 S. Ct., 34, 78 L. Ed., 131; *Sprout* v. *South Bend*, 277 U. S., 163, 48 S. Ct., 502, 72 L. Ed., 833, 62 A. L. R., 45; *Ozark Pipe Line Corp.* v. *Monier*,

266 U. S., 555, 45 S. Ct., 184, 60 L. Ed., 439. This principle is not disputed, the controlling question being whether the transactions here involved constituted interstate commerce so as to be exempt from taxation.

■ The shipment of goods from one State to another in fulfillment of a contract of sale, where the parties required, or contemplated, such shipment, is interstate commerce. *Sonneborn Bros.* v. *Cureton*, 262 U. S., 506, 43 S. Ct., 643, 646, 67 L. Ed., 1095. In the last cited case the Court, in an opinion by Mr. Chief Justice TAFT, said: "Many of the sales by the appellants were made by them before the oil to fulfill the sales was sent to Texas. These were properly treated by the State authorities as exempt from State taxation. They were in effect cnotracts for the sale and delivery of the oil across State lines. The soliciting of orders for such sales is equally exempt. Such transactions are interstate commerce in its essence and any State tax upon it is a regulation of it and a burden upon it."

■ ■ What constitutes interstate commerce is not a technical legal conception, but a practical matter to be determined upon a broad consideration of the substance of the whole transaction. *United States* v. *Erie Railroad Co.*, 280 U. S., 98, 50 S. Ct., 51, 74 L. Ed., 187; *Pennsylvania R. Co.* v. *Clark Bros. Coal Min. Co.*, 238 U. S., 456, 35 S. Ct., 896, 59 L. Ed., 1406; *Dozier* v. *Alabama*, 218 U. S., 124, 30 S. Ct., 649, 54 L. Ed., 965, 28 L. R. A. (N. S.), 264; *Swift & Co.* v. *United States*, 196 U. S., 375, 25 S. Ct., 276, 49 L. Ed., 518. Hence the absence of a provision from the contract of sale requiring the shipment of goods from without the State is not controlling, where such shipment was contemplated by the parties and was actually so made.

238

In *Federal Trade Commission* v. *Pacific States Paper Trade Association*, 273 U. S., 52, 47 S. Ct., 255, 258, 71 L. Ed., 534, the Court said: ''The sale by the wholesaler to the retailer is the initial step in the business completed by the interstate transportation and delivery of the paper. Presumably the seller has then determined whether his source of supply is a mill within or one without the state. If the contract of sale provided for shipment to the purchaser from a mill outside the state, then undoubtedly it would be an essential part of commerce among the States. *Sonneborn Bros.* v. *Cureton*, 262 U. S., 506, 515, 43 S. Ct., 643, 67 L. Ed., 1095. Clearly the absence of such a provision does not affect the substance of the matter when in fact such a shipment was contemplated and made.''

■ Where the interstate shipment of goods is not contemplated or required by the parties, a contract of sale within a State, between persons residing in that State, for delivery of goods therein, is not interstate commerce merely because the seller fulfills the contract by shipment to the purchaser of goods from a point without the State. *Wiloil Corporation* v. *Pennsylvania*, 294 U. S., 169, 55 S. Ct., 358, 79 L. Ed., 838.

*Ware & Leland* v. *Mobile County*, 209 U. S., 405, 28 S. Ct., 526, 52 L. Ed., 855, 14 Ann. Cas., 1031; and *Banker Brothers Company* v. *Pennsylvania*, 222 U. S., 210, 32 S. Ct., 38, 56 L. Ed., 168, are relied upon by the appellant. These cases merely recognize and apply the principle stated in the last paragraph. In the *Ware & Leland Case*, the business of taking orders on commission for future delivery, and transmitting such orders to other States, was held not to be interstate commerce, because in some instances, independently of the contractual obligation,

the purchaser might thereafter transmit the subject-matter of purchase by means of interstate carriage. In the *Banker Brothers Company Case*, there were contracts of sales of automobiles between a seller and purchasers residing in Pennsylvania. After such contracts were entered into, the seller acquired the automobiles by a separate and independent contract with a manufacturer in New York. No relation of principal and agent existed between the manufacturer and the seller. When the vehicles were constructed by the manufacturer, they were shipped to the seller, came to rest as his property in Pennsylvania and were thereafter delivered to the buyers. The transactions between the seller and the buyers were properly held not to be interstate commerce.

Thus the controversy narrows itself to a consideration of whether, in the transactions involved, the parties *required* or *contemplated* the interstate shipment of goods which was actually made in the performance of those contracts. Under the facts outlined above, we think the statement of this question carries its own answer. It cannot be denied that the appellee, the seller, contemplated a shipment from without the State. It also is clear that such a shipment was contemplated, if not required, by the purchaser, Davidson County.

Counsel for the State discuss the case as one in which the parties to the contract were the purchasing commission of Davidson County and the Southern Oil Service, Incorporated. We think this is to view the transaction too narrowly and technically. The purchaser of the gasoline was Davidson County, and not its purchasing commission. What was contemplated by the Southern Oil Service, Incorporated, the seller, and by the county engineer and the county attorney of Davidson County is

just as much a part of the substance of the whole trans-
action as what was contemplated by the members of the
purchasing commission.

In holding that an interstate shipment of goods was
contemplated by the parties, without treating as essen-
tial a consideration of the knowledge and intentions of
the purchasing commission, we do not hold that a ship-
ment of gasoline from refineries outside the State was
not contemplated by the purchasing commission. The
mere statement by a single individual, who was one of
seven persons serving on the purchasing commission dur-
ing the time in question, that he did not know an inter-
state delivery was contemplated is certainly indecisive.

The undisputed facts show that the price bid by the
Southern Oil Service, Incorporated, and the price paid by
the county did not include the State tax, and that the
tax was not included because the parties had been ad-
vised this was unnecessary, if the gasoline was shipped
to the county from out-of-state refineries. The price was
in most instances less than the gasoline tax itself. The
matter of shipping the gasoline from refineries outside
the State was discussed between agents of the county
and agents of the seller. Such interstate shipments were
agreed upon prior to the making of the contracts, and
such shipments were actually made. This was ''inter-
state commerce in its essence'' and we regard as imma-
terial the fact that the requirement of interstate delivery
was not specifically written into the accepted bid, when
every bidder had actual notice that such delivery was
contemplated.

■ We are also of the opinion that the transactions
here involved are not taxable under the explicit language
of sections 1127 and 1128 of the Code, as amended.

These sections provide that no gasoline shall be included in the measure of the tax liability of a dealer, or distributor, unless such gasoline "shall have previously come to rest within the meaning of the Interstate Commerce clause of the Federal Constitution." At the time of the sales here sought to be taxed, the gasoline, which was the subject-matter of such sales, had not come to rest within Tennessee. This gasoline never did come to rest within this State as the property of the seller, or as property within its possession or control. When the interstate shipment ended, that is, when the gasoline came to rest in Tennessee, there had been a delivery of it to Davidson County. There was no storage or distribution of the gasoline in question by the Southern Oil Service, Incorporated. The basis of the tax, if any, is the sales made to Davidson County. At the time of such sales, the gasoline had not "previously come to rest" in this State.

Davidson County, which actually stored and used the gasoline, is not subject to the taxing statute for the reason that, subordinate governmental bodies not being expressly included, the statute does not apply to it. *Nashville* v. *Smith*, 86 Tenn., 213, 6 S. W., 273; *State ex rel. Fort* v. *City of Jackson*, 172 Tenn., 119, 110 S. W., 323. The fact that the statute permits a governmental agency to store or use gasoline without tax liability does not justify an effort to tax sales to such agencies by disregarding as surplusage the requirement that the subject matter of the sale must previously have come to rest in Tennessee.

Sections 1127 and 1128 of the Code, as amended by Chapter 130, Public Acts of 1933, impose a privilege tax upon a dealer or distributor, as defined in the stat-

ute, measured by the quantity of gasoline sold, distributed, or stored in Tennessee. When the statute provides that no gasoline shall be used as a measure of the tax unless it ''shall have previously come to rest'' in the State, the word *previously* cannot be disregarded. Construed in its context, this word requires that the gasoline shall have come to rest ''previously'' to the sale, storage, or distribution, which is the taxable event. In the transactions here considered, the gasoline had not come to rest in Tennessee prior to its sale. It never came to rest in this State as the property of the seller, and its storage in Tennessee by the purchaser subsequent to the sale cannot onerate the seller with a tax. Of course, in such a transaction as is here considered, a tax attaches when the gasoline is distributed or stored, unless, as in the present case, the purchaser is exempt from the tax. We are of opinion that the decree of the Chancellor must be sustained on this additional ground, and it is so ordered.

Affirmed.