KEARNS COAL CO. *v.* CITY OF KNOXVILLE.

SAME *v.* DANCE, COUNTY COURT CLERK, *et al.*

(*Knoxville,* September Term, 1945.)

Opinion filed December 1, 1945.

J. H. Hodges, of Knoxville, for Kearns Coal Co.

Ben Winick, of Knoxville, for City of Knoxville.

William F. Barry, Sol. Gen., and Allison B. Humphreys, Jr., Asst. Atty. Gen., for State of Tennessee.

James G. Johnson, of Knoxville, for J. W. Dance, County Court Clerk.

Mr. Justice Gailor delivered the opinion of the Court.

Companion bills were filed by complainant Kearns Coal Company, in the Chancery Court of Knox County, against the City of Knoxville and J. W. Dance as County Court Clerk of Knox County and *ex officio* collector of privilege taxes for the state and county. The purpose of the bills was to recover certain privilege taxes paid by complainant under section 1248.36 of Williams Code, for the year 1944. Said taxes had been paid under protest by the complainant, who sets out the reasons for the protest and alleged illegality of the collection, in identical terms in both bills, as follows: "Complainant would show that none of its business in Tennessee is in intrastate commerce, but that all orders taken by its solicitors must be sent to its main office in Cincinnati, Ohio for approval or disapproval, and that it has no stock in trade in the

State of Tennessee, and that its entire business, insofar as the State of Tennessee or City of Knoxville is concerned, is in interstate commerce and the levy and collecting of a privilege license by the defendant is unconstitutional in that it is a burden on interstate commerce and, therefore, the said privilege license, paid under protest, was illegally collected by the defendant, City of Knoxville.''

Complainant was later allowed to amend by adding to its original bill:

''Complainant avers that it, at no time during the year for which the tax was collected, did or since said time, has been doing business in the City of Knoxville and in Knox County, Tennessee so as to make it liable for privilege license as a 'coal dealer.' ''

Respondents met these bills with demurrers, and when the demurrers were overruled, filed answers. Thereafter depositions were taken, and on the hearing the chancellor, in a well considered opinion, found the operations of complainant on which the taxes had been collected were not in interstate commerce. He further found that the complainant was taxable under section 1248.36 of the Code, and dismissed the bills.

From this action of the chancellor the complainant has perfected appeals, and it is agreed that the law and facts being substantially identical, the cases for all purposes are consolidated, and appealed in a single transcript.

The pertinent facts disclosed by the evidence and found by the chancellor are that complainant is a foreign corporation with its principal office and place of business in Cincinnati, Ohio; that it has a resident representative described as a ''solicitor'' in the original bills, in Knoxville, Tennessee, where, in the Park National Bank Building, it maintains a permanently equipped office, with

telephone listed in the name of the corporation, and the name of the corporation on the office door. It is fair to describe complainant as a coal broker, taking orders from wholesale dealers in that commodity, and having shipments of coal made to the dealer direct from the mine. The details of the operation before us are that the Knoxville representative of complainant solicits and secures orders from the Knoxville wholesale dealers and transmits these orders to Cincinnati, where the orders, if accepted, are transmitted to the mine for shipment by railroad to the Knoxville dealer, who is notified by the Knoxville representative of the shipment and the arrival of the coal.

It is agreed that during 1944, the year for which the tax was levied, all shipments were made from coal mines in Roane, Anderson and Campbell counties, Tennessee, so that none of the coal sold in Knox County by the complainant crossed the state line before delivery to the dealer.

Stress is laid by complainant on the fact that the Knoxville representative has no authority to make final acceptance of an order and on the fact that sales are made f. o. b. at the mine. Complainant has no bank account and keeps no financial records in Knoxville.

It appears that the mine operator who loads the coal in Tennessee, sends the bills of lading to Cincinnati, where the home office notifies the representative in Knoxville of the shipment, and the representative in turn notifies the dealer. The dealer is billed directly from Cincinnati, and makes payment direct to that office. We do not find in the record an estimate of the total amount of coal sold by complainant in the Knoxville territory during the year for which the tax was collected, but judging by the fact that one dealer testified that during the year he had

bought 146 cars, and another that he had bought more than 40 cars, we infer that complainant is doing a sizable business in the Knoxville territory.

Two propositions are presented to invalidate the tax: (1) That the operation was in interstate commerce. (2) That the operation is not such as to render complainant liable for the tax under Code section 1248.36.

We find no merit in the first contention since it is agreed, as stated by the chancellor in his opinion and complainant's counsel in their brief, that all the coal involved was mined in Tennessee counties adjacent to Knox, and never crossed a state line between the mine and delivery to the wholesale dealer.

Counsel insists that "the billing" or the way the papers, payment and orders for transportation were handled are determinative. No authority is cited to support the proposition that where no part of the commodity which is the object of the purchase and sale, the essence of the contract, has crossed a state line, that the transaction is one in interstate commerce. There is a wealth of authority to the contrary.

"The question whether commerce is interstate or intrastate must be determined by the essential character of the commerce, and not by mere billing or forms of contract, although that may be one of a group of circumstances tending to show such character." *Atlantic Coast L. R. Co.* v. *Standard Oil Co.*, 275 U. S. 257, 268, 48 S. Ct. 107, 110, 72 L. Ed. 270, 275.

"The essential character of the commerce and the real and ultimate destination of the shipment, and not the billing, determines whether it is 'interstate commerce.'" *United States* v. *Philadelphia & R. Ry. Co.*, D. C., 232 F. 946 (Headnote).

" 'Commerce among the several states' is a practical conception, not drawn from the 'witty diversities' (*Yaites* v. *Gough, Yelv.* 33) of the law of sales. *Swift & Co.* v. *United States,* 196 U. S. 375, 398, 399, 25 S. Ct. 276, 49 L. Ed. 518, 525, 526." *Rearick* v. *Pennsylvania,* 203 U. S. 507, 512, 27 S. Ct. 159, 160, 51 L. Ed. 295, 297.

Where the interstate shipment of goods is not contemplated or required, a contract is not one in interstate commerce. *State ex rel.* v. *So. Oil Serv., Inc.,* 174 Tenn. 232, 238, 124 S. W. (2d) 704; *Wiloil Corp.* v. *Pennsylvania,* 294 U. S. 169, 55 S. Ct. 358, 79 L. Ed. 838. In a case from Alabama, *Ware* v. *Mobile County,* 146 Ala. 163, 41 So. 153, 14 L. R. A. (N. S.) 1081, 121 Am. St. Rep. 21, on a state privilege tax which went to the U. S. Supreme Court, it was held that although the papers evidencing the transactions or contracts crossed state lines, the operation was held to be not in interstate commerce because:

"In neither class of contracts, for sale or purchase, was there necessarily any movement of commodities in interstate traffic because of the contracts made by the brokers. . . . The delivery, when one was made, was not because of any contract obliging an interstate shipment, and the fact that the purchaser might thereafter transmit the subject-matter of purchase by means of interstate carriage did not make the contracts as made and executed the subjects of interstate commerce." *Ware & Leland* v. *Mobile County,* 208 U. S. 405, 413, 28 S. Ct. 526, 529, 52 L. Ed. 855, 859, 14 Ann. Cas. 1031.

As to the second question and the liability of complainant for the tax imposed by section 1248.36, the pertinent part of the section is:

"Coal or coke agents or dealers.—Each person who shall sell coal or coke at wholesale or retail shall pay the following tax: (Specification of amount of tax according

to counties.) This tax shall not be paid for a period of less than one year and such tax shall be paid by any person selling and delivering coal, whether as a peddler or otherwise and whether a delivery yard is maintained or not. Such tax shall be paid in each county in which sales and deliveries of coal are made.''

We find no ambiguity in this section and by it we think a privilege tax was laid on any one engaging in the coal business as agent or dealer in any of the counties of Tennessee. That the complainant is so engaged in Knox County is manifest from the undisputed evidence before us. It maintains a permanent office and agent in the Park National Bank Building in Knoxville. The name of the corporation is there listed in the telephone book and appears on the office door. As a result of this set-up more than 180 cars of coal were sold and delivered to wholesale dealers in Knoxville during the year for which the tax was collected. We think complainant's liability for the tax is clear.

We find no error in the chancellor's decree and it is affirmed.