WILLIAM H. NEWBY, Plaintiff in Error,

*v.*

STATE OF TENNESSEE, Defendant in Error.

388 S.W. 2d 136.

(*Nashville,* December Term, 1964.)

Opinion filed March 4, 1965.

610

CHARLES D. HASTON, of HASTON & HASTON, McMinnville, for plaintiff in error.

GEORGE F. McCANLESS, Attorney General, EDGAR P. CALHOUN, Assistant Attorney General, for defendant in error.

MR. JUSTICE HOLMES delivered the opinion of the Court.

The plaintiff in error, William H. Newby, hereinafter referred to as defendant, was convicted of involuntary manslaughter. The jury fixed his punishment at confinement in the State Penitentiary for not more than five years. The Trial Judge sentenced the defendant to confinement in the County Workhouse for a period of one year. The defendant's motion for new trial was overruled and he has perfected his appeal to this Court and assigned errors. The three assignments of error question the sufficiency of the evidence to sustain the verdict and judgment of the Trial Court.

The prosecution results from an automobile accident which occurred shortly after eleven o'clock A.M., on

April 6, 1963, at a point on U. S. Highway 70S, a few miles west of McMinnville, in Warren County, Tennessee. Four persons were killed in this accident. On this occasion Eugene Curtis, his wife, and young daughter, Teresa, together with Ben Curtis, his wife, and young daughter, Vickie, and another child were proceeding east in a Falcon automobile going toward McMinnville. The defendant, alone in his 1957 Buick automobile, was traveling west toward his home from McMinnville. Eugene Curtis, Ben Curtis, Vickie Curtis, and Teresa Curtis were killed in the accident. No eye witnesses to the accident testified at the trial.

Two highway patrolmen and a constable of Warren County, who came to the scene after being notified of the wreck, testified for the State. Apparently, the cars collided head-on. A picture of the Curtis car taken at the scene shows the front of that car was demolished, with the heaviest damage being to the left front.

Trooper H. F. Perry fixed the scene of the accident as being four miles west of McMinnville where there is a curve in the highway. With reference to this curve, this witness testified that the Curtis car ''had not gotten into the curve'' and the defendant ''had already passed the point of the curve.'' It was raining and the highway was slick. The Curtis car came to rest with both front wheels off of the paved portion of the highway on the south shoulder and with the left rear wheel approximately one foot north of the south edge of the highway. The defendant's car was angled across the highway with the front bumper hanging over the guard rail on the south shoulder of the highway. The defendant's car, according to the witness Perry, was 10 feet east (towards McMinnville) from the Curtis car. According to this witness, the debris

was about halfway between the two vehicles off of the pavement on the south shoulder of the highway. There were skid marks made by the Curtis car approximately the length of an automobile on the south side of the highway. There were no visible skid marks from defendant's automobile. At this point there were yellow lines in the center of the highway on both sides of the center line.

When the officers arrived at the scene, the defendant was sitting on the front seat of his car on the right, with the door open, with his face in his hands, and he was bleeding. State Trooper Perry testified there was a strong odor of alcohol on defendant's person. He could not tell whether or not defendant was under the influence of an intoxicant because of defendant's injuries. He searched the vehicles and found three unopened cans of beer in the defendant's car, partly under the seat on the driver's side. This witness further testified defendant told him that he was driving his automobile west from McMinnville to his home at the time of the accident.

State Trooper H. C. Allen testified he did not talk to the defendant but did help him get into an automobile at the scene and smelled the odor of an intoxicant on defendant's person, which he believed to be the odor of beer. He saw the three unopened cans of beer found by Trooper Perry in the defendant's automobile. He was not asked whether or not the defendant was under the influence of an intoxicant. He placed the cars at the scene when he arrived substantially as was testified by Trooper Perry. Also, Trooper Allen testified there was no debris at all on the paved portion of the highway. He said the oily mud and debris that comes from under a car involved in an accident was about ten feet in front of the Curtis car on the south shoulder of the highway. He fixed the loca-

tion of the accident as "a couple of miles" west of McMinnville.

The State's remaining witness, Dwain Boyd, was not asked about the odor of an intoxicant on defendant's person. He testified there was debris in the highway on the left side as you go west. He then stated the debris was six or eight feet in front of the Curtis car. He testified the defendant was bleeding from both his mouth and his nose. He located the scene of the accident in relation to the curve in the highway substantially as the other witnesses.

The defendant offered no evidence but relied upon the insufficiency of the State's proof. No witness attempted to testify to the speed of either car or the course of either vehicle prior to the impact except as the skid marks of one car length laid down by the Curtis car prior to impact may bear on this question. Whether or not other vehicles were on the roadway immediately preceding the impact does not appear. It is not shown whether or not defendant was taken to a hospital and observed by doctors after the accident. Neither of the adult occupants of the Curtis car who survived the wreck testified. There is no evidence relating to the activities of the defendant in McMinnville that morning prior to the accident. When and where he acquired the three cans of beer found under the seat of his car does not appear. The evidence in the record is limited to the facts observed by the officers at the scene following the accident, together with the testimony that defendant stated he was driving his automobile in a westerly direction at the time. The only witness who was asked whether or not the defendant was under the influence of an intoxicant could not testify that he was. All of the evidence is circumstantial.

In *Smith v. State,* 205 Tenn. 502, 522, 523, 327 S.W.2d 308, this Court, speaking through the present Chief Justice, quoted with approval the following statements from Wharton's Criminal Evidence, 12th Edition, Vol. 3, Sec. 980, et seq., relative to the sufficiency of circumstantial evidence:

"Circumstantial evidence may by itself be sufficient proof of the commission of a crime and sufficient proof on which to base a conviction." 522 of 205 Tenn., 317 of 327 S.W.2d.

"In the effort to guard against improper verdicts, it is commonly stated that in determining the sufficiency of circumstantial evidence, (1) all the essential facts must be consistent with the hypothesis of guilt, as that is to be compared with all the facts proved; (2) the facts much exclude every other reasonable theory or hypothesis except that of guilt; and (3) the facts must establish such a certainty of guilt of the accused as to convince the mind beyond a reasonable doubt that the accused is the one who committed the offense." 522 and 523 of 205 Tenn., 317 of 327 S.W.2d.

■ Can it be said on the evidence in the record that the defendant was driving the car under the influence of an intoxicant so as to make him guilty of an act *malum in se,* which, as held in *Keller v. State,* 155 Tenn. 633, 634, 299 S.W. 803, 59 A.L.R. 685, supplies criminal intent? We think not. The evidence does not exclude the hypothesis that the defendant had only one can of beer in McMinnville before he started home shortly after eleven o'clock in the morning. There is no evidence of any conduct on his part at the scene of the accident to indicate he was under the influence of an intoxicant. The bare fact that there was an odor of intoxicant on his person is not

sufficient to support a finding that he was driving under the influence of an intoxicant. Certainly some doctor must have treated him for his injuries following the accident and must have observed his condition for sobriety or intoxication. Also, if he left McMinnville immediately prior to the accident in an intoxicated condition, someone there must have observed his condition. We cannot say that the bare evidence that he had an odor of an intoxicant on his person without more is sufficient to justify a finding that he was driving under the influence of an intoxicant.

The testimony of highway patrolmen that the debris which falls from an automobile when it is involved in a collision was on the south shoulder of the highway would indicate that the collision occurred on the south shoulder and not on the paved portion of the highway. We then look to the record for circumstances tending to show why both vehicles were in this position. We know it was raining and the highway was slick. We have no testimony as to the speed of either vehicle prior to impact. We don't have any evidence as to the location of the Curtis car in the highway prior to the accident except that for about one car length before the impact it was on its proper side of the highway. What its course was prior to that time is not shown, nor is there any evidence as to when or why the defendant's car came on to the south shoulder of the highway.

██ It has been stated frequently by this Court that, to support a conviction of crime, the accused must have been guilty of a higher and grosser degree of negligence than that which merely suffices to support a judgment in a civil case. This rule is perhaps most fully stated in *Potter v. State,* 174 Tenn. 118, 127, 124 S.W.2d 232, 236, as follows:

"It is a matter of common knowledge that drivers frequently violate the rule which requires that a car be driven altogether on its right side of the center of the road unintentionally and without any realization at the moment of the exact position of the wheels of the vehicle. It is frequently a matter of in-attention and oversight, and there is no proof here satisfactory to this Court, even conceding that the defendant's car was over the center line at the moment of the impact, that he was intentionally or consciously so driving. An essential element of criminal liability is thus lacking. As said in *Copeland v. State,* 154 Tenn. 7, 11, 285 S.W. 565, 566, 49 A.L.R. 605, reversing a conviction of manslaughter in a highway accident case, 'Allowance must always be made for misadventure and accident.' And, commenting thereon, it was said in *Hiller v. State,* 164 Tenn. 388, 50 S.W.2d 225, 226, 'it is uniformly held that the kind of negligence required to impose criminal liability "must be of a higher degree than is required to establish negligence upon a mere civil issue." ' See, also, *Holder v. State,* 152 Tenn. 390, 277 S.W. 900, and *Claybrook v. State,* 164 Tenn. 440, 51 S.W.2d 499. The test appears to be whether or not the driver, violating the highway statute in the particular above considered, does so consciously, or under circumstances which would charge a reasonably prudent person with appreciation of the fact and the anticipation of consequences injurious or fatal to others." 126 and 127 of 174 Tenn., 236 of 124 S.W.2d.

In *Trentham v. State,* 185 Tenn. 271, 206 S.W.2d 291, the defendant started around a curve on the wrong side of the road at an excessive rate of speed. There "witness after witness" testified as to the speed of the car and that the defendant was driving on the wrong side of the

road. The conviction for involuntary manslaughter was affirmed in that case. Such conduct on the part of the defendant in that case amounted to a conscious indifference to consequences. The proof showed he deliberately drove on the left side of the road around a sharp curve at an excessive rate of speed.

Here, we are left to engage in speculation and conjecture as to what caused the defendant's car to go to the south shoulder of the highway. According to the patrolmen, the Curtis car "had not gotten into the curve" at the point of impact and the defendant's care "had already passed the point of the curve."

In describing the curve where this accident happened, the State's witness Boyd stated, "There is a slight curve there." There is no evidence as to the distance each car could be seen by the driver of the other car. Apparently, the driver of the Curtis car did not become appreciative of any danger and apply brakes until within one car length of the point of impact. This could have been true because the defendant suddenly cut out from behind another car into the path of the Curtis car. There is, however, no evidence of the presence of another vehicle on the roadway. This could also have been true because the defendant's car skidded on the wet, slick roadway without criminal negligence on the part of the defendant. Also the Curtis car could have been on defendant's side of the road and both drivers could have cut to the south side of the road about the same time.

■ Having carefully reviewed the evidence contained in this record in the light of our reported decisions in automobile homicide cases, we can only conclude that the circumstantial evidence relied upon by the State does not exclude every other reasonable theory or hypothesis

except that of guilt. The evidence offered by the State leaves so much to surmise and conjecture that we cannot say on the facts appearing in the record that the defendant was guilty of a higher and grosser degree of negligence than that which merely suffices to support a judgment in a civil case.

The judgment is reversed and the cause is remanded for a new trial.