Coot Claybrook *v.* The State.*

*(Jackson,* April Term, 1932.)

Opinion filed June 18, 1932.

---

*As to degree of criminal negligence, see 20 R. C. L., 9; R. C. L. Perm. Supp., p. 4801.

J. B. AVERY, for plaintiff in error.

W. F. BARRY, JR., Assistant Attorney-General, for defendant in error.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This is a conviction of involuntary manslaughter, with imprisonment fixed by the jury at six months in jail. A Mr. Golden was killed in an automobile collision on a concrete highway. Plaintiff in error was driving a Ford Sedan with several other colored people riding with him. Mr. Golden, with his wife, drove onto the highway from a side or cross road, which the testimony shows was narrow and obscured from view along the highway by a cut and under-growth. His car was struck just after it entered on the highway. Mrs. Golden says her husband stopped and blew his horn three times before proceeding to cross the highway, and Mr. Golden's dying statement is that he stopped and blew four times. Plaintiff in error testified that he blew his horn as he approached the crossing. Witnesses for the State, who were so near that they neard the noise of the brakes,

which the proof shows were promptly applied by the defendant, say they heard no horn. Even if the horn was blown by Golden, there is no showing of how long before the collision it was blown, and criminal negligence can hardly be imputed to plaintiff in error on the ground that he should have heard it. The generally recognized law of the road concedes to the driver on the main highway the right of way, and puts on the crossing driver the primary duty of caution. There is no evidence of criminal negligence unless this may be predicated on proof of excessive speed. The defendant appears to have done all possible to avoid the collision after the Golden car appeared in view. It is insisted that the facts show a case of unavoidable accident, attributable mainly to the blind character of the intersection, and we are convinced that this theory is sustained by a preponderance of the evidence. The Attorney-General in his brief in this Court frankly concedes serious doubt that the evidence shows such culpable negligence as would sustain a conviction for involuntary manslaughter.

A review of the testimony shows that the defendant's car was moving around thirty to thirty-five miles an hour, not a negligently high rate of speed under modern conditions, along a concrete highway, with an apparently clear track ahead. The only testimony indicating high speed is that skid marks were made for some distance when the brakes were applied, and the statement of a witness that the Ford was doing its best at a point where it passed him beyond a hill, about two hundred yards distant from the accident.

■ As said in *Copeland* v. *State,* 154 Tenn., 11, "Allowance must always be made for misadventure and accident, as distinguished from culpable negligence;" and

that it is uniformly held that the kind of negligence required to impose criminal liability "must be of a higher degree than is required to establish negligence upon a mere civil issue."

 The collision occurred in August, 1930, more than a year after the passage of the motor vehicle act of 1929, which was generally taken to have repealed the former law fixing a speed limit of thirty miles an hour. While this Act was later held unconstitutional, we agree with the Attorney-General that criminal liability may not justly be predicated on the theory that the subsequently determined unconstitutionality of his ·Act rendered it so null and void *ab initio* as that the defendant, if driving however slightly above thirty miles an hour when the collision took place, was guilty of criminal negligence.

In *Beaver* v. *State,* 142 Tenn., 415, the view was endorsed that the citizen may rely on an enactment of the legislature until it has been declared unconstitutional or repealed; and in *Hunter* v. *State,* 158 Tenn., 63, it was declared that he must treat the law as constitutional at his peril, until judicially otherwise decreed. In the Beaver case Mr. JUSTICE MCKINNEY quoted with approval from the strong opinion of CHIEF JUSTICE GUMMERE in *Lang* v. *Bayonne,* 74 N. J. Law, 458, 15 L. R. A. (N. S.), 101, 122 Am. St. Rep., 391, in which he declares that, "To require the citizen to determine for himself, at his peril, to what extent, if at all, the legislature has overstepped the boundaries defined by the Constitution in passing this mass of statutes, would be to place upon him an intolerable burden, one which it would be absolutely impossible for him to bear—a duty infinitely beyond his ability to perform. In my opinion, the pro-

visions of a solemn act of the legislature, so long as it has not received judicial condemnation, are as binding upon the citizen as is the judgment of a court against him so long as it remains unreversed."

Finding no sufficient evidence of criminal negligence on the part of plaintiff in error, the judgment must be reversed.