Reed *v.* State.

*(Knoxville,* September Term, 1937.)

Opinion filed Nov. 27, 1937.

Hobart Adkins, of Knoxville, for plaintiff in error.

W. F. Barry, Jr., Assistant Attorney-General for the State.

Mr. Chief Justice Green delivered the opinion of the Court.

The defendant has been convicted of involuntary manslaughter, given a sentence of eighteen months in the penitentiary, and has appealed in error to this court.

By reason of what the jury regarded as defendant's criminal negligence in the operation of an automobile, one E. W. Lavolle met his death. Lavolle was killed in

a head-on collision on the Knoxville and Maryville highway between his automobile and an automobile operated by the defendant.

There is not a great deal of controversy in the proof as to the manner in which the collision occurred. There is a conflict in the testimony as to whether the defendant was under the influence of intoxicating liquor at the time. We do not find it necessary to deal with this conflict. If, indeed, the defendant was entirely sober, the case made out against him by the State is even worse.

The collision occurred on Sunday afternoon about 4 miles out from Knoxville. The weight of the proof is that there was heavy traffic in each direction. Defendant was driving from Knoxville, toward Maryville, at a speed which the State's witnesses estimate at 40 miles an hour or more. He and his companions estimate his speed as somewhat less.

The defendant approached a truck from the rear and undertook to pass it. In this effort, State's witnesses testified that defendant's car, as he turned out to the left, grazed a car driven by one Leach coming into Knoxville. After getting past Leach's car, and over on his left-hand side of the road, defendant's car collided, almost head-on, according to the State's proof, with the car driven by deceased.

Proof introduced by the State shows that deceased's car was being driven at a moderate rate of speed, that it closely followed Leach's car, and that deceased was driving his car entirely on his right-hand side of the road—on defendant's left-hand side of the road—when the collision occurred.

From the evidence of the State's witnesses, it is quite obvious that no driver, exercising even small care, would

have undertaken to pass the truck in front of him as defendant did, traffic conditions being what they were.

According to the defendant, he started to pull to his left to pass the truck but saw deceased's car and pulled back. Defendant said that deceased's car was to deceased's left of the center white line when the collision occurred. This testimony of defendant, however, is not sustained by that of his own witnesses, other boys in his car. State's witnesses testify to the contrary and it is difficult to see how deceased's car passed the truck upon defendant's theory. Deceased must necessarily have been on his right of the white line to have gotten by the truck defendant tried to pass, for defendant admits the collision occurred just behind the truck.

Criticism is made of the charge but we find nothing therein of which the defendant can complain. The court charged the law with reference to intoxicated drivers as laid down by this court in *Crossway* v. *State,* 157 Tenn., 363, 370, 8 S. W. (2d), 486, and *Keller* v. *State,* 155 Tenn., 636, 299 S. W., 803, 59 A. L. R., 685.

Defendant relies on *Copeland* v. *State,* 154 Tenn., 7, 11, 285 S. W., 565, 49 A. L. R., 605; *Claybrook* v. *State,* 164 Tenn., 440, 441, 51 S. W. (2d), 499, and that line of cases. None of the fatalities in these cases was considered by the court as a probable result of the particular act of negligence. None of the acts of negligence moreover was regarded as *malum in se.*

In the case before us, in view of the traffic on this highway, this collision was not only a probable result but almost an inevitable result of such negligence as the defendant's. Likewise we think the act of defendant in undertaking to pass this truck, turning out to his left in heavy and closely approaching opposing traffic,

was an act *malum in se*. It was an act on a par with firing a gun into a crowded street, or dropping a heavy object into such a street from a tall building.

We find no error in the record, and the judgment below must be affirmed.