POTTER *v.* STATE.

(*Knoxville,* September Term, 1938.)

Opinion filed Feb. 4, 1939.

Poore, Kramer & Cox, of Knoxville, for plaintiff in error.

Nat Tipton, Assistant Attorney-General, for the State.

Mr. Justice Chambliss delivered the opinion of the Court.

This appeal is from a conviction of involuntary manslaughter, with a sentence of a year and a day in the State Prison, under an indictment charging operation of a truck on the State Highway, without due caution and circumspection, at a speed and in a manner so as to endanger person and property, resulting in the death of Dorothy Bayne. Assignments of error challenge the verdict of the jury as against the preponderance of the evidence and the charge of the Court as failing to make clear to the jury the distinction between negligence which affords ground for civil liability and that negligence which justifies a criminal conviction.

The death of Miss Bayne was the unfortunate result of a collision between a ton and a half truck being driven by defendant Potter, a young man of twenty years of age, and an automobile being driven by Miss Bayne, at about 10:30 P. M., on the night of May 22, 1937, at a point some four hundred feet northeast of the County line between Blount and Knox Counties, the Highway at this point being paved and some eighteen feet in width, with graveled shoulders on either side. Miss Bayne, who lived in Knoxville, was returning from Maryville, where she and two companions in the car with her had spent two or three hours on this evening, loitering about a filling station. One of these companions was Miss Carrie Reasor, a friend of Miss Bayne, and the other was Henry Oliver, a young man acquaintance. Miss Bayne was driving her car, Oliver sitting in the middle. Miss Bayne's car, at the time of the collision, was moving up a grade approaching the crest of a hill. The truck was coming back from a trip which Potter had made to Knoxville, with two companions, young men named Spradling and Moore, of about Potter's age. The collision occurred shortly after the truck had crossed the crest of this hill, and was coming down the grade proceeding toward Maryville. Miss Bayne was thrown from her car and so badly injured that she was unconscious until her death took place in the hospital in Maryville a few hours later. The only eye-witnesses of the collision were Oliver and Miss Reasor for the State and the defendant and his two companions for the defense. The testimony of others is directed to the appearance of the cars after the accident, their location and certain marks upon the Highway; also, a considerable amount of the testimony was upon the question of the alleged intoxication of Potter, but this

matter is not material on this appeal, as the result of the jury's finding was to acquit Potter of this charge.

A careful reading of the record indicates that there was very little substantial conflict except as to the two propositions only of (1) speed of the respective cars, which is not shown to have affected the result, and (2) their respective locations on the Highway—specifically whether or not the truck driven by Potter was at the time of the collision on its right side of the middle of the road, or was traveling with its left wheels over the middle line, it being the theory of the State that this was the situation, and that this was the cause of the collision. On the one hand, the three young men testified very positively that the truck was on its right side altogether, and that the collision resulted from what appeared to be an attempt on the part of the driver of the Bayne car to pass a car proceeding toward Knoxville in front of the Bayne car. These young men all testified that the Bayne car headed out into the center of the road, with an apparent purpose to pass this preceding car, and that before it could get back the collision took place. While the record shows that a number of cars were passing along this Highway in both directions, no witness is put on by the defendant to support the testimony of these young men in this truck to the effect that there was a car proceeding toward Knoxville at the time, some twenty or more feet in advance of the Bayne car. On the other hand, there is no positive testimony to the contrary, unless it be that of Oliver and Miss Reasor, although several witnesses give testimony negative in character on this point. Neither Oliver nor Miss Reasor, as we understand their testimony, are able to state very definitely with respect to this matter. Oliver is asked by plaintiff's attorney

on this point, "As you came up the highway to the point at which this collision occurred was there any other traffic in front of you, immediately in front of you, other than the truck that hit you?" To this he answered, "I didn't see any." This is as positive as he is able to make it. On this particular point Miss Reasor was asked and answered as follows:

"Q. When you got out near the place the accident happened your car was following another car, wasn't it?

"A. I don't remember whether it was or not.

"Q. You don't remember you were right behind another car traveling the same direction?

"A. No sir.

"Q. You don't remember just before this accident happened you started to pass another car traveling the same way?

"A. No sir, I don't.

"Q. You don't know whether that is true or not true?

"A. No sir, I don't know."

Miss Reasor says she did not see the truck until just before the collision,—she saw its lights and then the crash. She nowhere attempts to locate the truck on the Highway, that is, as to the side it was on, although she says they had been driving all along on their right at a speed of twenty miles an hour, no more or less. Quite evidently the collision occurred very suddenly, and she is unable to say just how. We think her story is told by her answer to the first question put to her on the point. After some preliminary questions, she was asked by plaintiff's attorney: "In your own words I wish you would tell the Court and jury all you know and can remember about what happened shortly before and at the time of the accident which resulted in the death of Miss

Dorothy." To this she answered, "Well, we were driving along down the highway and the first thing we knew this truck hit us." Oliver testifies that as soon as he saw the lights of the truck, he exclaimed that they might or would be hit, and that he seized the wheel of the Bayne car and succeeded in getting the car off of the concrete, so that the right-hand wheels were on the gravel shoulder where the collision occurred. Oliver and Miss Reasor say that all three of the occupants of the Bayne car were engaged in conversation. She says they were laughing and talking, and were paying no particular attention, as is quite natural, to details of the traveling. Neither Oliver nor Miss Reasor were injured, but some object described as a stick or other projection from the truck pierced the body of Miss Bayne and precipitated her from the car. The record shows that the car was damaged on its left side, although not turned over, and Oliver says it stood angling across the road immediately after the collision, with its front toward the center of the road. On this Miss Reasor testified as follows:

"Q. How was your car standing after the accident?

"A. Along the highway.

"Q. Straight up and down the highway?

"A. It wasn't right straight, but it wasn't across.

"Q. Wasn't it angling across with the front of your car beyond the center of the highway?

"A. Just a little, not so much.

"Q. Not much, but nearly straight with the highway as you recall it?

"A. Yes sir.

"Q. Wasn't your car nearly directly across the road with the front of your car nearly to the white line in the center of the asphalt?

"A. I am not sure but I don't think it was."

The truck was also particularly damaged on its left side, and the force of the collision was such that the front wheels of the truck were knocked from under the body and ran off to the right of the road, while the truck itself ran down the Highway for some distance and finally came to a stop on the left hand side of the road. Neither of the three young men in the truck were seriously injured.

On the other controverted question of fact, that of speed, the testimony is not at all satisfactory. Oliver expresses the opinion that the truck was moving around fifty miles an hour as it approached the car he was in. Miss Reasor loosely gives a like estimate, but we think her testimony shows that this estimate is of little value, as, indeed, is natural under such circumstances. Of course, it is utterly impossible that she should have been able to gauge the speed of the truck. It is argued for the State that the condition in which the truck was found and the distance down the Highway which the body of the truck ran after the collision indicates high speed, but this is little more than a surmise. The grade was considerable, and it is difficult to estimate the speed from these physical facts. We do not think that a case of reckless speed is at all made out. The accident could have occurred just as it did if the speed had been thirty-five or forty miles an hour, or thereabouts, as testified by the young men who were in the truck. The case, therefore, gets back, on the facts, to whether or not Potter was driving down this grade approaching the Bayne car with the left wheels of his truck over on the left side of the center line. The State relies upon certain marks on the roadway made by the skidding of the wheels or the scraping of parts of the truck. But a very intelligent witness

for the defense, Mr. Huffstettler, who had worked for the Forestry Service, highway, fire and police patrol, and who appears to be wholly disinterested, testified that his examination of the surface of the Highway indicated that the wheels of the truck at the point of the collision were on the truck driver's right hand side of the white line, and that the marks indicated that the truck ran down on that side and then crossed on over to the left, where it stopped, it then being, of course, out of control. The result is that we are unable to predicate any definite decision on this evidence of marks on the highway, always more or less unsatisfactory. Therefore, we get back to the testimony of the eye witnesses, none of whom are impeached in any way. As has been seen, the defendant and his companions insist that they were on their right side. We have heretofore quoted from Miss Reasor's testimony. We now quote from that of Oliver, who locates the accident on the slope of a hill, the car moving about twenty-five miles an hour up the grade on its right side of the center, at a point in Knox County some four hundred feet over the Blount County line, and says that when he first saw the truck it was about the center of the highway, "cutting over to their right hand side:"

"Q. Whose right hand side?

"A. To their right hand side.

"Q. What part of the highway was it occupying when you first saw it?

"A. About the middle.

"Q. State how much of the car was on which side of the center line.

"A. About half and half.

"Q. In other words, about half of the car was on your side of the road?

"A. Yes sir.

"Q. Cutting to the right?

"A. Yes sir, and it must have gotten too far over and angled back to us.

"Court: Was the truck coming towards your car?

"A. That is right."

The effect of this is that as the truck came down the slope it got over too far to its right and in angling back ran over too far to its left, and collided with the Bayne car.

On Cross-examination he is asked and answered:

"Q. At any time after that truck came into view had your car ever been up on your left hand side of the highway or upon what would be that truck's right hand side of the highway?

"A. No, not that I know of.

"Q. Were you observing?

"A. I didn't notice it if it was over that way."

It is obvious from a consideration of all of this testimony that the facts regarding this accident are in doubt and confusion. We find it difficult to determine just how it occurred and which car was in fault. But, conceding that this Court may not say that the record shows a preponderance against the finding of the jury to the effect that the driver of the truck was in fault, we have been unable to find that this negligent conduct is of that degree and character which, under the holdings of this Court, constitutes negligence justifying a criminal conviction. Certainly, if any credence is to be given to the testimony of the driver of the truck, the defendant, and his two companions, there was no purposeful or conscious violation of the highway regulations in driving on the wrong side of the road. It is a matter of

common knowledge that drivers frequently violate the rule which requires that a car be driven altogether on its right side of the center of the road unintentionally and without any realization at the moment of the exact position of the wheels of the vehicle. It is frequently a matter of in-attention and oversight, and there is no proof here satisfactory to this Court, even conceding that the defendant's car was over the center line at the moment of the impact, that he was intentionally or consciously so driving. An essential element of criminal liability is thus lacking. As said in *Copeland* v. *State,* 154 Tenn., 7, 11, 285 S. W., 565, 566, 49 A. L. R., 605, reversing a conviction of manslaughter in a highway accident case, "Allowance must always be made for misadventure and accident." And, commenting thereon, it was said in *Hiller* v. *State,* 164 Tenn., 388, 50 S. W. (2d), 225, 226, "it is uniformly held that the kind of negligence required to impose criminal liability 'must be of a higher degree than is required to establish negligence upon a mere civil issue.' " See, also, *Holder* v. *State,* 152 Tenn., 390, 277 S. W., 900, and *Claybrook* v. *State,* 164 Tenn., 440, 51 S. W. (2d), 499. The test appears to be whether or not the driver, violating the highway statute in the particular above considered, does so consciously, or under circumstances which would charge a reasonably prudent person with appreciation of the fact and the anticipation of consequences injurious or fatal to others. For example, one who drives over the crest of a hill on the wrong side of the road, or who drives out from behind a line of congested traffic into the face of near approaching vehicles (as in the recently reported case of *Reed* v. *State,* 172 Tenn., 73, 110 S. W. (2d), 308), can hardly be acquitted of criminal negligence on his plea of inadvertence.

The demand for diligence and caution is too imperative under such conditions to be so excused. In this class of cases the defendant must be held to have knowingly violated the law, and must be held to the consequences, whether foreseen or not. Such cases call for application of a rule of unrebuttable presumption of conscious indifference. The facts of the instant case, however, as before shown, do not bring it within this class, so that we are constrained to hold that criminal negligence is not established, and the judgment must be reversed.