# *TRENTHAM *v.* STATE.

## (*Knoxville*, September Term, 1947.)

Opinion filed November 29, 1947.

---

*See Weaver v. State, p. 276, infra.

R. L. OGLE, of Sevierville, for plaintiff in error.

NAT TIPTON, Asst. Atty. Gen., for the State.

MR. JUSTICE PREWITT delivered the opinion of the Court.

The defendant, Frank Nelson Trentham, was convicted of involuntary manslaughter as the result of an automobile collision on the main highway between Sevierville and Newport, in which the deceased, Walter Marshall, lost his life. The defendant was sentenced to serve one year and a day in the State prison for deceased's death.

The defendant was driving a Ford automobile on State Highway No. 35 from Sevierville toward Newport. He was driving in an easterly direction and started to drive around a very sharp curve to the right when he collided with the Buick automobile driven by the deceased, inflicting injuries upon the latter from which he subsequently died.

It is insisted by the State, and borne out by the preponderance of the evidence, that defendant, accompanied by a woman by the name of Maggie Huskey, started around this curve on the wrong side of the road and ran into the Buick car driven by the deceased. Witness after

witness testified as to the speed of the car and the fact that defendant was on the wrong side of the road. There was some proof that defendant and Maggie Huskey had been drinking some beer, but the amount consumed is not definitely known. A quart bottle of beer was found near the defendant's wrecked car.

The defendant claimed that he was on the right side of the road and is corroborated in this by his woman companion, but the overwhelming weight of the proof is against the contention of the defendant.

In *Potter* v. *State,* 174 Tenn. 118, at pages 127 and 128, 124 S. W. (2d) 232, at page 236, the Court laid down the rule that not every casual or incidental driving on the wrong side of the road where a collision ensues, is there criminal liability, but made this further observation:

"The test appears to be whether or not the driver, violating the highway statute in the particular above considered, does so consciously, or under circumstances which would charge a reasonably prudent person with appreciation of the fact and the anticipation of consequences injurious or fatal to others. For example, one who drives over the crest of a hill on the wrong side of the road, or who drives out from behind a line of congested traffic into the face of near approaching vehicles (as in the recently reported case of *Reed* v. *State,* 172 Tenn. 73, 110 S. W. (2d) 308), can hardly be acquitted of criminal negligence on his plea of inadvertence. The demand for diligence and caution is too imperative under such conditions to be so excused. In this class of cases the defendant must be held to have knowingly violated the law, and must be held to the consequences, whether foreseen or not. Such cases call for application of a rule of unrebuttable presumption of conscious indifference."

In *Hurt* v. *State*, 184 Tenn. 608, 201 S. W. (2d) 988, the evidence showed that Hurt was driving at an excessive rate of speed on the left side of the highway, but the vehicle with which he collided entered it from a side road, at whose junction a stop sign existed, and Hurt's driving on the left side of the highway was but incidental to his passing another vehicle, where his view was unobstructed. In that case Hurt was justified in presuming that the vehicle approaching from the side road would observe the stop sign and not go on the highway until its driver had ascertained that it was clear. ·

In the present case, the defendant had no superior right upon this highway to the deceased. Their rights were equal. Each was entitled to half of the road, and when the defendant went across the middle line of the highway he was trespassing upon the highway rights of another. We cannot shut our eyes to the expected shocking consequences that not only will probably result but are also expected to result in turning a sharp curve with a high-powered motor vehicle running at a high rate of speed, to wit, 50 to 55 miles per hour, on the wrong side of the road. Such conduct keeps equal cadence with the driver who heedlessly undertakes to pass a motorist in front of him on the crest of a hill, or who undertakes to drive out from behind the line of congested traffic into the face of approaching vehicles. Where one undertakes to pass another vehicle on the crest of a hill, one's view is obstructed, and this is equally true where one undertakes to go around a sharp curve on the wrong side of the road when an oncoming vehicle could not be seen. The result is not only probable but reasonably expected mischief, and such conduct amounts to gross negligence.

■ As to the charge of the trial judge, we think the law applicable was clearly laid before the jury. The trial judge charged the jury in part as follows:

"Involuntary manslaughter is where it plainly appears that neither death nor any bodily harm was intended, but death is accidentally caused by some unlawful act; or any act not strictly lawful in itself, but done in an unlawful manner and without due caution."

■ The trial judge then proceeded to charge the jury under section 10827 of Williams' Code, which makes it unlawful for any person to drive an automobile while under the influence of liquor, etc.

Later on in his charge, the trial judge said:

"The kind of negligence required to impose criminal liability must be of a higher degree than is required to establish negligence upon a mere civil issue; and allowance must be made for misadventure and accident as distinguished from culpable negligence; and before you can convict in this case upon this theory you must be convinced that a homicide was not improbable under the facts as they existed; and in order to convict for homicide it must appear that the death was not the result of misadventure but the natural and probable result of a reckless or culpably negligent act."

We think the trial judge gave a fair and accurate charge that was free from error. The record discloses a willful and wanton disregard of human rights and safety, and presents a case where the willful acts that resulted were not only probable but could be reasonably expected.

The assignments of error are all overruled and the judgment of the lower court is affirmed.

All concur.