SMITH *v.* STATE.

*(Nashville,* December Term, 1953.)

Opinion filed February 11, 1954.

L. E. GWINN and WM. WALKER GWINN, both of Memphis, for defendant.

KNOX BIGHAM, Assistant Attorney General, for the State.

MR. JUSTICE PREWITT delivered the opinion of the Court.

The defendant Freeman Smith was convicted of involuntary manslaughter and sentenced to eleven months and twenty-nine days in the Shelby County penal farm. The criminal prosecution resulted from an automobile wreck occurring about 1 o'clock a. m. on December 14, 1952. At the time, Mrs. May Ponds was driving her car north on Highway 51 from Memphis towards Millington at a speed of about 40 miles an hour, with her headlights on dim. At this point the speed limit was 45 miles per hour. Mrs. Ponds testified that the traffic was heavy both northbound and southbound. Another automobile was approaching from the north and traveling in a southerly direction. Immediately behind this car was the automobile being driven by defendant. Just before the lead car passed Mrs. Ponds, the automobile driven by defendant turned out of its own lane and into the path of Mrs. Ponds' automobile, resulting in the collision wherein Clara King, a passenger in the defendant's car, was killed. Mrs. Ponds testified that she did not hear any sound of tires skidding on the pavement. A highway patrolman testified that defendant stated shortly after the occurrence that he had had something to drink earlier

that night; however, the state conceded that the preponderance of the evidence is against the contention that the defendant was intoxicated. This patrolman also testified that he was unable to find any skid marks at the scene. An investigator for the Attorney General stated that defendant told him he was driving about 60 or 65 miles an hour and that he saw a car in front of him and that he hit the brakes, and when he did so, he saw that he was going to hit the car in front of him. He thereupon turned the car to his left and hit the ditch and then another car in front hit him. The defendant claims that the car in front of him suddenly slowed down and that he put on his brakes in order to slow down but that his car skidded sideways and into the path of the Ponds car.

We think under the evidence presented that the jury was justified in rejecting the contention of the defendant. Mrs. Ponds did not hear tires skidding on the pavement and the highway patrolman saw no skid marks on the highway. The testimony of these two witnesses excludes the possibility that defendant applied his brakes at all. Here we have a situation where the defendant admittedly exceeding the speed limit, in heavy traffic, suddenly turned his own vehicle out of its own lane and into the path of an approaching car. These facts are sufficient to sustain a conviction under our authorities.

In *Keller* v. *State,* 155 Tenn. 633, 299 S. W. 803, 59 A. L. R. 685, this Court held that where there was an automobile collision and it appeared that the driver was intoxicated, this was sufficient to show that it was an act malum in se and thus made the accused criminally guilty.

The defendant here insists that since the preponderance of the evidence shows that he was not intoxicated, the facts herein bring it within the rule of *Copeland* v. *State,* 154 Tenn. 7, 285 S. W. 565, 566, 49 A. L. R. 605.

It was said in the Copeland case, in reversing a conviction of manslaughter in a highway accident:

"Allowance must always be made for misadventure and accident * * *."

Later, commenting on the holding of *Copeland* v. *State,* supra, it was said in *Hiller* v. *State,* 164 Tenn. 388, 50 S. W. (2d) 225, 226:

"The kind of negligence required to impose criminal liability must be of a higher degree than is required to establish negligence upon a mere civil issue."

See also *Holder* v. *State,* 152 Tenn. 390, 277 S. W. 900 and *Claybrook* v. *State,* 164 Tenn. 440, 51 S. W. (2d) 499.

In *Reed* v. *State,* 172 Tenn. 73, 74, 110 S. W. (2d) 308, it appeared that the collision occurred on Sunday afternoon about four miles out from Knoxville and the weight of the proof was that there was heavy traffic in each direction. The defendant in that case was driving from Knoxville towards Maryville at a speed which the state's witnesses estimate at 40 miles an hour or more. Defendant approached a truck from the rear and undertook to pass it. In this effort, state's witnesses testified that defendant's car, as he turned out to the left, grazed a car driven by one Leach coming into Knoxville. After getting past Leach's car, and over on his left-hand side of the road, defendant's car collided almost head-on, according to the state's proof, with the car driven by deceased.

It was said in this last-cited case:

"In the case before us, in view of the traffic on this highway, this collision was not only a probable result but almost an inevitable result of such negligence as the defendant's. Likewise we think the act

of defendant in undertaking to pass this truck, turning out to his left in heavy and closely approaching opposing traffic, was an act malum in se. It was an act on a par with firing a gun into a crowded street, or dropping a heavy object into such a street from a tall building."

In *Reed* v. *State,* supra, it was said further:

"There is not a great deal of controversy in the proof as to the manner in which the collision occurred. There is a conflict in the testimony as to whether the defendant was under the influence of intoxicating liquor at the time. We do not find it necessary to deal with this conflict. If, indeed, the defendant was entirely sober, the case made out against him by the State is even worse."

In *Potter* v. *State,* 174 Tenn. 118, 124 S. W. (2d) 232, 236, it was said:

"The test appears to be whether or not the driver, violating the highway statute in the particular above considered, does so consciously, or under circumstances which would charge a reasonably prudent person with appreciation of the fact and the anticipation of consequences injurious or fatal to others. For example, one who drives over the crest of a hill on the wrong side of the road, or who drives out from behind a line of congested traffic into the face of near approaching vehicles (as in the recently reported case of *Reed* v. *State,* 172 Tenn. 73, 110 S. W. (2d) 308), can hardly be acquitted of criminal negligence on his plea of inadvertence. The demand for diligence and caution is too imperative under such conditions to be so excused."

See also *Intercity Trucking Co.* v. *Daniels,* 181 Tenn. 126, 178 S. W. (2d) 756.

Again, in *Trentham* v. *State,* 185 Tenn. 271; 206 S. W. (2d) 291, it was held that the conduct of the defendant, in turning a sharp curve in the highway with a high-powered automobile running at a speed of from 50 to 55 miles per hour on the wrong side of the highway, was gross negligence sustaining a conviction for involuntary manslaughter of the driver of the automobile struck by defendant's automobile when rounding a curve from the opposite direction.

Then, in *Bradam* v. *State,* 191 Tenn. 626, 235 S. W. (2d) 801, it was held that evidence that defendant left his truck on a travelled portion of the highway at night without any lights so that the victim ran into the rear of the truck and was fatally injured, was sufficient to sustain a conviction for involuntary manslaughter.

In the present case, the defendant was exceeding the speed limit, considering the congested traffic and, evidently faced with the fact that he must run into the rear of an automobile or take a chance on cutting across on the wrong side of the highway, this collision occurred. He must have appreciated the fact that such conduct would bring about consequences injurious or fatal to others.

We do not think this is a case of mere misadventure and accident but came as the result of the defendant's criminal negligence.

There are other assignments of error which we have considered and find without merit.

It results that the judgment of the lower court is affirmed.