JACK SMITH *v.* STATE OF TENNESSEE.

(*Knoxville,* September Term (May Session) 1954.)

Opinion filed June 10, 1955.

GEORGE E. WESTERBERG, of Cleveland, for plaintiff in error.

NAT TIPTON, Assistant Attorney General, for the State.

MR. JUSTICE BURNETT delivered the opinion of the Court.

Jack Smith, a young man about 21 years of age, was indicted and convicted for involuntary manslaughter with his punishment fixed at not more than 2 years confinement in the penitentiary. This case presents another one of those unfortunate involuntary manslaughter cases growing out of the driving of an automobile.

On Christmas Day of 1954, Smith, while on the way to pick up his mother struck and killed a six-year-old child in the Town of Cleveland. The child seems to have been playing on a bridge, leading to the Big Springs School. with another child and not upon a public highway. One of the witnesses said that the child was four

feet off of the highway. The State's proof is to the effect that the plaintiff in error was driving his automobile at a speed estimated, by at least one witness, at 40 miles per hour. They say that he was driving north on Washington Avenue to where it intersects with Johnson Blvd., and that the intersection is a dead end street. Witnesses say that both Washington Avenue and Johnson Blvd., were paved with loose gravel and that the speed of the plaintiff in error's car was what attracted their attention and that his speed was so great that it disabled him from making his turn safely and as a result of skidding in this loose gravel he skidded onto the edge of the bridge where these children were playing and killed this child. There is testimony in the record admittedly that the plaintiff had one drink of liquor in the morning prior to this but the evidence clearly and overwhelmingly preponderates against the fact that the plaintiff in error was under the influence of an intoxicant. This is conceded by the State.

After the accident Smith jumped out of his car almost before he got it stopped which was in some 25 or 30 feet from where the accident happened and picked up first one little boy and laid him over on the side of the road and then the other little boy. At first Smith did not see but one child but after he got out of the car he saw both of them. Apparently the child that was killed was under the car and had been run over by Smith. When witnesses got there Smith was very excited and was crying. Smith testifies that he was driving just 10 miles per hour when he reached Johnson Blvd., and that the child ran into his car. The record though is replete with evidence that skid marks were seen on the gravel of these two streets and that the plaintiff in error was driving faster than he says.

We have in the past few years had a great many of these lawsuits where the person was convicted of in-

voluntary manslaughter in driving under various and sundry conditions. The last of these reported cases is *Smith* v. *State,* 196 Tenn. 168, 264 S. W. (2d) 803, wherein this Court speaking through Mr. Justice Prewitt reviews many of our past cases on the subject. The Court there concludes that Smith was guilty of involuntary manslaughter when on a main thoroughfare he drove his car into the wrong side of the road and into an approaching car without attempting to apply the brakes thereby killing one of his passengers. The plaintiff in error relies upon the case of *Weaver* v. *State,* 185 Tenn. 276, 206 S. W. (2d) 293, as supporting his position. In this same volume, 185 Tenn., will also be found the case of *Trentham* v. *State,* at page 271, 206 S. W. (2d) 291, wherein the driver was found guilty. Suffice it to say that it is perfectly evident from reviewing these cases that each case must rest upon its own peculiar facts.

> ''The test appears to be whether or not the driver, violating the highway statute in the particular above considered, does so consciously, or under circumstances which would charge a reasonably prudent person with appreciation of the fact and the anticipation of consequences injurious or fatal to others.'' *Potter* v. *State,* 174 Tenn. 118, 127, 124 S. W. (2d) 232, 236.

And as said in the Weaver case, supra, if we apply this rule to the facts of the instant case was the homicide herein ''the natural and probable result of 'his negligence' ''? We have likewise laid down the rule that one driving at an excessive rate of speed and on the left of the center of the road is only guilty of *malum prohibitum* and under such conditions, that is, when it is just merely simple negligence the driver would not be guilty of a crime. So the serious question then is presented herein

whether or not under these very unfortunate circumstances Smith was guilty of such wilful and wanton negligence as here presented by the facts as to distinguish this case from a mere civil case of negligence.

Frankly this case has given us great concern. In the first place we are probably duty bound to look at this case in the light of the State because the jury and the trial judge have found this situation against the plaintiff in error and in favor of the State and under such circumstances the burden is here on the plaintiff in error to show that such circumstances do not prevail as to make this young man guilty of such wilful and wanton negligence so that it might be concluded that he consciously disregarded the rights of others. Smith does not insist that he was unfamiliar with the locus in quo nor the nature of the dead end street and the abrupt turn which he was approaching. He does not say that he did not know that these streets were covered with loose gravel at that point; he does not claim that he did not know that loose gravel would cause one to skid; he does not claim that he did not know this was in a school zone. The record discloses that this is inside the City limits and a comparatively rather thickly settled neighborhood, where children certainly might be anticipated to be playing in the streets. We are bound by the jury and the trial court having accepted the factual situation that the plaintiff in error was driving at a rather rapid rate of speed under the circumstances when we consider the dead end street and their being covered with loose gravel. The only thing that we have to counter this rate of speed is the statement of the plaintiff in error. The jury certainly did not accept this statement. When we consider these facts it leads us to believe that the trial court was correct in concluding, and we are concluding, that the

plaintiff in error was guilty of more than civil negligence in the way he operated his automobile at this point. The testimony of the witnesses is to the effect that when he skidded that part of his car in skidding went up over this bridge and hit this child and that this was close to and connecting school property with the public highway. Such actions certainly show the lack of proper control under the circumstances. We must conclude as did the jury that plaintiff in error thus was not operating his automobile with such care and caution as one would be required to do to exonerate him from criminal responsibilities placed upon the operator of an automobile under the law.

It is contended, as is obvious from what has been said above, that the main contention herein is that the facts of this case do not make a case of criminal liability. There is another assignment of error, that the trial court erred in not sustaining a motion to quash the indictment. It is true that the indictment is very inartificially drawn but as we read the indictment it is sufficient to put the person indicted on notice of what he is indicted for. We take it that it is a two count indictment though the two separate paragraphs in the indictment are not numbered. The first paragraph or count, whatever you call it, is clearly and inferentially based upon our state automobile statutes governing the operation of automobiles on the highways and charges that an automobile struck and killed this child naming the child and was operated by the defendant. In the second paragraph the instrumentality used in killing this child is left blank but reading the two together the only clear and natural and logical inference is that it was from the way the plaintiff in error operated his automobile. In this paragraph or second count of the indictment it is based on operating

it while under the influence of an intoxicant which as we all know makes the person so operating guilty of conduct malum in se. *Keller* v. *State,* 155 Tenn. 633, 636, 299 S. W. 803, 59 A. L. R. 685.

As we said in the outset and as is conceded by the State the evidence herein clearly preponderates against the fact that this car was being operated while the man was in an intoxicated condition. The evidence does show that he had cans of beer in his car and he admits that he had had one drink of liquor prior thereto. His claim is that this did not affect him because he was used to drinking liquor while in the army. These facts though, even though it is conceded the man was not so intoxicated that he could be prosecuted for driving while under the influence of an intoxicant, may be considered. The jury may have concluded that either this affected his judgment as to the way he was operating this automobile at the time that he killed this child or that he lacked the proper judgment in the method in which he was operating it when he attempted to make this turn at the dead end street.

After a full and thorough consideration we are constrained to affirm the judgment below.