Ralph Lee OSBORNE, Plaintiff-in-Error,

v.

STATE of Tennessee, Defendant-in-Error.

Court of Criminal Appeals of Tennessee.

April 3, 1974.

Certiorari Denied by Supreme Court June 17, 1974.

Burkett C. McInturff, Kingsport, Cecil Quillen, Gate City, Va., for plaintiff-in-error.

David M. Pack, Atty. Gen., John B. Hagler, Jr., Asst. Atty. Gen., Nashville, Carl K. Kirkpatrick, Dist. Atty. Gen., Kingsport, for defendant-in-error.

OPINION

MITCHELL, Judge.

The defendant Ralph Lee Osborne, represented by his attorney Honorable B. C. McInturff, was convicted on May 3, 1973 in the Criminal Court of Sullivan County of involuntary manslaughter, in the killing of Larry Jones by the unlawful operation of a motor vehicle on or about January 9, 1973.

The jury fixed the punishment at five years in the State Penitentiary upon which the Trial Judge Honorable John K. Byers duly pronounced judgment and sentence of not less than one nor more than five years in the penitentiary.

After a motion for a new trial was heard and overruled the defendant appealed and assigned errors.

The facts and circumstances which were evidently accepted by the jury, were that a collision between a Buick automobile and a Volkswagon occurred at the intersection of Highway 37 and Highway 11–W in Sullivan County, near midnight on January 9, 1973. The defendant Ralph Lee Osborne was the driver of the Buick. Larry Jones, the driver of the Volkswagon, was killed in the accident and his lifeless body was found in the middle of the highway at or near the place of the collision. His head was bursted and his brains and blood were on the highway. It was stipulated that Larry Jones died as a result of the wreck.

The defendant's Buick automobile, after the collision, had apparently gone off the highway and 75 feet down an embankment and was found on its side with the motor of the Volkswagon at or against the windshield of the Buick. The weather was real cold but motors of the two cars were still warm. The proof showed the investigating officer found a .25 caliber automatic pistol in the front floor of the Buick and a pint bottle about half full of whiskey under the front seat. The trunk of the Buick was open and whiskey had fallen out and some bottles were broken but the officer recovered 6 bottles of Early Times whiskey that were not broken. The defendant's Buick automobile had a Hawkins County, Tennessee registration No. 21–PO67.

The officer learned the defendant had reported his Buick automobile had been stolen and he went to see Mr. Osborne in an effort to determine what happened to his car. The officer was trying to find out who had stolen the car, and the identity of the driver. The officer said at that time he did not have any idea Osborne was driving the Buick.

On the night of January 9, 1973, Tennessee Highway Patrolman Jack Combs was on traffic duty on Stone Drive or 11–W at Waterman's Texaco Station. Trooper Combs testified he was sitting in his patrol car with his lights on right at the edge of the highway facing it. He saw a truck coming up the highway and saw a brown Buick car passing the truck at a speed of ninety to a hundred miles an hour. Combs threw his spot light on the Buick, in an effort to stop him, but he seemed to pick up speed instead of slowing down. Combs pursued the Buick with his vehicle going a hundred and fifteen (115) miles per hour. He couldn't tell whether he was gaining on the Buick or not. Trooper Combs then came to the intersection of highway 37 where he saw a body laying in the middle of the highway with steam coming up off the inner parts of the body. The officer then told the people in a truck and a car which had come on the scene, to watch the body while he went down under the bank to check on the brown Buick which he had just been chasing. He could not find anybody with the Buick which was laying on its side. He saw footprints that led from the Buick off toward the super highway. The distance from the place he first saw and started his pursuit of the defendant's car, to the place of the collision was a mile and eight tenths or two miles.

The Volkswagon was just rolled up over the driver's head as if someone had taken a cutting torch and rolled it back over. Pieces of the Volkswagon were scattered everywhere. The engine was down under the bank. The victim's head was bursted open and brains scattered on the highway. There were no eye witnesses to the collision of the two cars.

George Mallicote manager of production planning at American Saint-Gobain saw

the defendant's car late at night, about ten miles south of the scene of the accident going toward Bristol. The car was being driven in an unusual manner. He passed Mallicote and was driving at a high rate of speed, flashing his lights, turning them off and on. Mallicote took his license number.

The proof showed the defendant left the scene of the wreck on foot. About thirty minutes after midnight on the night of the wreck Officer John Teague of the Sullivan County Sheriff's Department and his partner were on patrol when they saw the defendant walking along the highway. The weather was real cold and there was snow. They stopped their car and asked the defendant what he was doing. He told them he was going to Tri Cities Truck Stop to eat breakfast. Officer Teague and his partner allowed the defendant to get into the car with them. When they got to the truck stop they asked the defendant for some identification. The defendant told them he had been to Bristol to see his girl friend, that a friend took him up there and her car would not start because it was so cold and he decided to hitch hike back to Gate City. The defendant had a strong odor of alcohol on his breath. The officer said the defendant "had a funny speech" and when they asked him about it he said he had something wrong with his throat. The defendant did not have any driver's license. The officers asked him about where he worked and whether he drove back and forth to work and he told them he did not, and that he did not need a driver's license to drive his employer's vehicles on their property. The officers asked him for his name and he told them it was Charles "Carter."

The officers said the defendant was not intoxicated enough to charge with public drunkenness. That "he had been drinking quite a bit though."

In their talk with the defendant he asked them if something was wrong and they told him there had been a bad accident up the highway from where they had picked him up.

Harold Cooner was with John Teague patrolling the highway when they picked up the defendant. Cooner corroborated John Teague's testimony.

Harry R. Jones Criminal Investigator with Virginia State Police in company of Trooper Hodges of Tennessee Highway Patrol talked to the defendant Osborne at his place of business at Wever City. The defendant Osborne said he parked his car at his residence in Hilton's Community on the night in question, about 10:30 and apparently left the key in it and the next morning about 9:30 on January 10, 1973 his car was gone.

Mryon Ray and his wife about 10:30 the night of January 9, 1973, started from Kingsport to Bristol, and at a point about 8 or 10 miles and about 12 minutes from the wreck, the defendant's car passed them going at a speed of 80 or 90 miles per hour.

James F. Keesling TBI Agent talked to the defendant Osborne on January 11, 1973 in the District Attorney's office at Blountville, Tennessee. He warned the defendant of his rights and the defendant made a voluntary statement.

The defendant said he knew what his rights were and was willing to make a statement. He said he left his place of business at the tobacco warehouse about 10:30 P.M., January 9, 1973, in his Buick car and went home where he parked his car. The next morning his car was gone, including the case of whiskey, a fifth of Ancient Age liquor, a .25 caliber pistol and sixteen to eighteen hundred dollars in money, which he had left in the car. He said he must have left the switch key in the car.

At another time the defendant told the officer that when he left the tobacco warehouse he drove around for some time, "just

fooling around." That he had no idea what time the wreck happened. That he went to sleep driving. The next think he remembered was glass breaking and it seemed like his Buick went into the air, breaking his ribs and hurting his head and neck. That when he got out of the Buick the only thing he thought of was to run. At that time he said he did not know another car was involved in the wreck. That he was later picked up by Sheriff's deputies, he told them his name was Charles Carter and "played dumb" and was soon released. The defendant said he had not drunk any whiskey or beer. That the reason he did not tell the officers he had had an automobile wreck was that he was afraid they would take his driver's license and he needed them. He said at that time he did not know anyone was killed in the wreck.

He admitted he called the Sheriff's office on the morning of January 10, 1973 and reported his Buick automobile was missing.

Keesling testified the defendant said "On January 9, 1973, the night I wrecked and killed Larry Jones, I don't remember cutting my lights on and off, don't remember passing the State Patrol car, and don't remember any patrol car being after me." He said he had no idea how fast he was driving.

Dr. S. G. Whitaker examined the victim and said the side of his head had been crushed which caused death. That the side of his head had been mashed in causing a complete fracture of the head. That the brain was exposed and a part of the brain missing. A person so injured could live probably a second, or a few seconds.

The defendant did not testify on the trial of this case.

Several businessmen testified as to the good character and reputation of the defendant.

## ASSIGNMENTS OF ERROR

The defendant has assigned the following errors:

1. There is no evidence to support the verdict of the jury in this case.

2. The verdict is contrary to the law and the evidence.

3. The overwhelming weight of the evidence preponderates in favor of the innocence of the defendant and against his guilt.

4. The state did not prove the vehicles collided or the vehicle being operated by the defendant had anything whatsoever to do with the wreck of the vehicle operated by the deceased and failed to prove at the time of the wreck that the vehicle Ralph Osborne was driving was operated in a manner to constitute criminal negligence which is necessary to support a verdict of manslaughter in this case.

The first three assignments attack the weight, sufficiency and legality of the evidence and will be considered together.

 Able defense counsel in his excellent brief recognizes the rule that the verdict of the jury, approved by the trial judge, accredits the testimony of witnesses supporting the verdict, resolves all conflicts in favor of the theory of the State, displaces the presumption of innocence and raises a presumption of guilt. A conviction will not be reversed on the facts unless it is shown by the defendant that the evidence preponderates against the verdict and in favor of his innocence. McBee v. State, 213 Tenn. 15, 372 S.W.2d 173; Schweizer v. State, 217 Tenn. 569, 399 S.W.2d 743; Pryor v. State, 217 Tenn. 695, 400 S.W.2d 700.

 The burden is on the defendant to show that the evidence preponderates against the verdict and in favor of his innocence. He has failed to carry that burden.

In the 4th assignment the defendant contends the State failed to prove the vehicles collided or that the vehicle operated by the defendant had anything to do with wreck of the vehicle operated by the deceased.

It is true none of the witnesses saw the collision of the defendant's vehicle and the vehicle of the deceased. But the State's witness Highway Patrolman Jack Combs according to his testimony was in hot pursuit of the defendant's Buick car which he said was being driven at such a high rate of speed that the officer had to drive at the speed of one hundred and fifteen miles per hour in an effort to overtake the defendant. This was so near the time of the collision that when Patrolman Combs came upon the collision he saw the victim dead, lying in the highway and steam arising from the body and the engines of both cars were warm. The defendant's Buick was on its side down at the bottom of a 75 foot embankment with the motor of the victim's vehicle resting at or against the windshield of the defendant's car.

The wrecked condition of the two cars showed the tremendous force with which they struck each other. It was stipulated Larry Jones died as a result of the wreck.

On a proper charge by the learned trial judge, the jury found the defendant guilty of involuntary manslaughter which indicates the jury found the circumstances justified the finding that the defendant was operating his Buick car at a high and negligent rate of speed in excess of the speed limit.

The jury verdict is indicative of the fact that the jury believed and found the defendant was driving his car in wilful and wanton disregard for the safety of persons or property.

It is true that the officers testified they smelled strong odor of intoxicants on the breath of the defendant. That it smelled more like beer than whiskey, but they said

he was not sufficiently intoxicated to be charged with public drunkenness but had been drinking quite a bit.

In Trentham v. State, 185 Tenn. 271, 206 S.W.2d 291, the Trial Court and the Supreme Court said:

"Later on in his charge, the trial judge said:

"The kind of negligence required to impose criminal liability must be of a higher degree than is required to establish negligence upon a mere civil issue; and allowance must be made for misadventure and accident as distinguished from culpable negligence; and before you can convict in this case upon this theory you must be convinced that a homicide was not improbable under the facts as they existed; and in order to convict for homicide it must appear that the death was not the result of misadventure but the natural and probable result of a reckless or culpably negligent act.'

We think the trial judge gave a fair and accurate charge that was free from error. The record discloses a willful and wanton disregard of human rights and safety, and presents a case where the willful acts that resulted were not only probable but could be reasonably expected.

The assignments of error are all overruled and the judgment of the lower court is affirmed."

Again in Brown v. State, 201 Tenn. 50, 296 S.W.2d 848, the Court said:

"The proof does show definitely, however, that defendant's car was on the wrong side of the road, and that he tried to pass another car on the crest of this hill. Passing another car on the crest of the hill where the view be obstructed is recognized as being completely negligent,

to that degree necessary to sustain a conviction, Trentham v. State, 185 Tenn. 271, 206 S.W.2d 291, and it is also prohibited by T.C.A. sec. 59–820, which is substantially the same as Section 6, para. (b), Ch. 82, Public Acts of 1931, the law which was in effect at the time of the collision. In this connection see also Bradam v. State, 191 Tenn. 626, 235 S.W.2d 801; and Smith v. State, 196 Tenn. 168, 264 S.W.2d 803.

As a general rule any violation of a statute wherein death ensues constitutes involuntary manslaughter if the violation of the statute be the proximate cause of death. There can be no question but that the effort of the defendant to pass this other automobile on the crest of this hill proximately caused the collision, and for this reason the driver of the car was guilty of involuntary manslaughter.

The evidence presented a question of fact as to the driver of this Ford car and this fact could be proven by circumstances. Ford v. State, 184 Tenn. 443, 201 S.W.2d 539. We think the circumstances were sufficient to warrant the jury in concluding the defendant was the driver.

The judgment below must be affirmed."

Marable v. State, 203 Tenn. 440, 313 S.W.2d 451, is authority for the proposition that the weight of circumstantial evidence is for the jury to determine.

We are unable to find any merit in the defendant's final assignment that the Court erred in permitting the State to introduce evidence concerning an alleged agreement between attorneys for State and defendant about the charge being manslaughter rather than murder in the second degree, this being in violation of the defendant's constitutional rights, including due process clause, equal protection of the law clause and the right to a fair, speedy, public trial as provided by the United States Constitution and the Constitution of Tennessee.

In the absence of the jury, on motion of the district attorney, he was permitted to introduce testimony by the State witness Agent Keesling that Keesling with the consent of the district attorney, promised the defendant if he would give a statement telling them who was the driver of the Buick car the defendant would not be prosecuted for second degree murder. Agent Keesling said "That's correct, sir. Mr. McInturff and yourself and myself met at your office."

The district attorney insisted he wanted this explanation in the record but did not want it to go to the jury. The defense counsel objected and contended that the State had no right to come into Court and discuss their negotiations in the presence of the Court.

This testimony was heard by the trial judge out of the presence of the jury. We do not think it prejudiced the rights of the defendant or affected the impartial frame of mind of the trial judge.

To hold that this is error would prevent the trial judge from conducting a hearing out of the presence of the jury for the purpose of determining the admissibility of evidence and would seriously impair the discretionary powers of the trial judge.

We are unable to find that the evidence preponderates against the verdict and in favor of the innocence of the defendant.

The assignments of error are overruled and the judgment is affirmed.

OLIVER and GALBREATH, JJ., concur.