# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE

Assigned on Briefs December 13, 2005

## STATE OF TENNESSEE v. MICHAEL W. BELCHER

**Appeal from the Criminal Court for Sullivan County**
No. S44,889      Phyllis H. Miller, Judge

---

**No. E2005-00532-CCA-R3-CD - Filed March 30, 2006**

---

The defendant, Michael W. Belcher, was convicted by a Sullivan County jury of two counts of aggravated assault by reckless conduct, for which he received an effective 24-year sentence as a career offender. Aggrieved of his convictions, the defendant brings the instant appeal challenging the sufficiency of the evidence to support his two convictions. After a thorough review of the record and applicable law, we hold that the evidence is sufficient to support the convictions and accordingly affirm the judgments of the lower court.

**Tenn. R. App. P. 3; Judgments of the Criminal Court are Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON and DAVID G. HAYES, JJ., joined.

Gene Scott, Jr., Johnson City, Tennessee, for the Appellant, Michael W. Belcher.

Paul G. Summers, Attorney General & Reporter; Elizabeth B. Marney, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Robert H. Montgomery, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

We summarize the evidence presented at trial. On March 27, 2000, the defendant was employed as a bellman at the Garden Plaza Hotel in Johnson City, Tennessee. One of his duties as bellman was to transport guests of the hotel to and from the airport via the hotel's shuttle van. Doctor Mohammed Shouri, a guest of the hotel, had traveled to Johnson City to interview for a pathology residency position at East Tennessee State University. After completing his interview and returning to the hotel, Dr. Shouri requested transportation to the airport. The guest services manager of the hotel, Patti Copeland, instructed the defendant to drive Dr. Shouri to the airport. During their drive, Dr. Shouri asked the defendant several questions about Johnson City in an attempt to learn more about his potential new job site. Doctor Shouri characterized the defendant's responses to his questions as slow and sluggish.

While traveling toward the airport on Highway 75, Dr. Shouri noticed that the shuttle van had drifted into the lane of opposing traffic and that another vehicle was approaching the van. Doctor Shouri then said to the defendant, "Hey, hey, hey, hey, watch, watch, watch," which is the last thing he recalled prior to the ensuing crash with a Toyota Corolla driven by Ramona Gouge. Ms. Gouge testified that she saw the defendant's vehicle approaching in her lane of traffic and therefore decided to veer into the opposite lane of traffic, which was clear. When the defendant corrected his error and returned to his lane of traffic, the two vehicles collided.

After the accident, the occupants of both vehicles were transported to Johnson City Medical Center.[1] Lieutenant Richard Hurley was the state trooper who initially responded to the accident.[2] After he and other state troopers evaluated the crime scene, he drove to the hospital to interview the individuals involved in the crash. The defendant agreed to give Lieutenant Hurley a statement, which Lieutenant Hurley transcribed and the defendant reviewed. Ms. Copeland was also present during this exchange, and she agreed to sign the defendant's statement as a witness. In his statement, the defendant recounted that he was fatigued while driving and must have fallen asleep when he was awakened by Dr. Shouri's alert. He then realized he had crossed into the wrong lane of traffic and corrected his error but was unable to avoid Ms. Gouge's vehicle, which had crossed into his lane of traffic.

After giving this statement, the defendant agreed to provide a blood sample for forensic evaluation. Ms. Gretchen Kelsey, a hospital nurse, collected the blood sample pursuant to Lieutenant Hurley's request, and Lieutenant Hurley then mailed the sample to the Tennessee Bureau of Investigation (TBI) Knoxville Crime Lab for a toxicology analysis. Upon receipt, TBI Special Agent forensic scientist Stephanie Dotson performed an initial toxicology screen of the defendant's blood, and that test revealed the presence of cocaine and a cocaine metabolite, ecgonine methyl ester. Cocaine is the parent drug of the metabolite ecgonine methyl ester, meaning that when the human body ingests cocaine and attempts to break it down, the body transforms cocaine into ecgonine methyl ester. Further testing confirmed the presence of 0.07 micrograms per milliliter of cocaine and 0.05 micrograms per milliliter of ecgonine methyl ester.

Doctor Kenneth Ferslew, who is the Chief Toxicologist at the East Tennessee State University College of Medicine and who testified as the state's expert witness, opined that the defendant's fatigued state prior to the accident was caused by an acute stage of cocaine toxicity. Specifically, Dr. Ferslew explained that individuals who regularly ingest cocaine require larger and larger amounts of the drug to maintain their "high." After staying on this extended high for a period

---

[1] Ramona Gouge's mother, Vernita Winters, was a passenger in Ms. Gouge's car. Ms. Winters died at the accident scene. The defendant was charged with vehicular homicide, a charge that was tried jointly with the aggravated assault charges now on appeal. The jury did not agree on a verdict on the vehicular homicide charge, and that charge was accordingly mistried.

[2] Mr. Hurley, whose title was state trooper at the time of the accident, had been promoted to the position of lieutenant by the trial date.

of time, their bodies "crash" when they come off the high, and they become very fatigued. Doctor Ferslew opined that the presence of cocaine and ecgonine methyl ester in the defendant's blood indicate that the defendant's fatigued state was caused by such a "crash."

Defense expert witness, Frederick Grim, a vehicular accident reconstructionist, opined that the physical evidence indicated that Ms. Gouge caused the accident by entering the defendant's lane of traffic and that the accident occurred in the defendant's lane of traffic, not Ms. Gouge's lane of traffic.

As a result of the accident, the occupants of both vehicles sustained injuries. The defendant broke his thumb and injured his leg; Dr. Shouri shattered his ankle, requiring several corrective surgeries; Ms. Gouge broke both ankles, several ribs, a wrist, a heel, and a hip, rendering her wheelchair-bound.[3]

Based on this evidence, the jury convicted the defendant of the aggravated assaults by reckless conduct of Dr. Shouri and Ms. Gouge. However, the defendant contends that the evidence is insufficient to support his convictions. Our consideration of that claim is grounded in legal bedrock. When an accused challenges the sufficiency of the evidence, an appellate court inspects the evidentiary landscape, including the direct and circumstantial contours, from the vantage point most agreeable to the prosecution. The reviewing court then decides whether the evidence and the inferences that flow therefrom permit any rational fact finder to conclude beyond a reasonable doubt that the defendant is guilty of the charged crime. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); *State v. Duncan*, 698 S.W.2d 63, 67 (Tenn. 1985); *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000).

In determining sufficiency of the proof, the appellate court does not replay or reweigh the evidence. *See State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Witness credibility, the weight and value of the evidence, and factual disputes are entrusted to the finder of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956); *Farmer v. State*, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). Simply stated, the reviewing court will not substitute its judgment for that of the trier of fact. Instead, the court extends to the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences that may be drawn from the evidence. *See Cabbage*, 571 S.W.2d at 835.

With these principles in mind we must determine whether the evidence in this record is sufficient to support the jury's verdicts. We begin with the definition of the conviction offenses.

_____

[3] Ms. Gouge was primarily wheelchair-bound at the time of trial and could stand unassisted for no longer than ten minutes at a time due to the injures she received in the instant accident. However, due to a lack of any medical expert testimony, we are unable to discern whether Ms. Gouge's wheelchair-reliance is a permanent condition or may improve over time.

A person commits reckless aggravated assault who "[r]ecklessly causes an assault as defined in § 39-13-101(a)(1), and: (A) Causes serious bodily injury to another; or (B) Uses or displays a deadly weapon." Tenn. Code Ann. § 39-13-102(a)(2) (2003); *see* § 39-13-101(a)(1) (defining assault as "intentionally, knowingly or recklessly caus[ing] bodily injury to another"). In this context, the term "reckless":

> refers to a person who acts recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint.

*Id.* § 39-11-302(c). "'Serious bodily injury' means bodily injury which involves . . . [e]xtreme physical pain[, p]rotracted or obvious disfigurement[,] or [p]rotracted loss or substantial impairment of a function of a bodily member, organ or mental faculty." *Id.* § 39-11-106(a)(34).

The defendant argues that the evidence introduced at trial was insufficient to support his reckless aggravated assault convictions because the state merely proved that the defendant fell asleep while driving and did not consciously drive into the wrong lane of traffic. The defendant cites *Potter v. State*, 174 Tenn. 118, 124 S.W.2d 232 (1939), for the proposition that criminal liability should not be extended to those who do not consciously drive in the wrong lane of traffic. The defendant further argues that the evidence was insufficient to prove he was intoxicated at the time of the accident because eyewitness testimony established that the defendant was lucid and did not appear intoxicated to those observing him. The state responds that the defendant's argument lacks merit because the evidence establishes that the defendant ingested cocaine and consciously disregarded a substantial and unjustifiable risk by driving under the influence of an intoxicant, thereby causing serious bodily injury to Dr. Shouri and Ms. Gouge.

We agree that the evidence, viewed in the light most favorable to the state, supports the defendant's two aggravated assault convictions. An analysis of the defendant's blood revealed the presence of 0.07 micrograms per milliliter of cocaine and 0.05 micrograms per milliliter of ecgonine methyl ester, which according to the state's expert witness indicates that the defendant was "crashing" from his prolonged cocaine use, thus causing his fatigued and inattentive state. Because the defendant, through his own statement, admitted that the accident resulted from his falling asleep while operating the hotel's shuttle van and because the evidence attributed his drowsiness to the voluntary use of illegal narcotics, we hold that the jury could have reasonably concluded that the defendant's ingestion of cocaine was the proximate cause of the accident which resulted in the convictions at issue. Specifically, a rational jury could have found that by ingesting cocaine and operating a motor vehicle, the defendant acted recklessly by being aware but consciously disregarding a substantial or unjustifiable risk. *See* Tenn. Code Ann. § 39-11-302(c) (2003); *see also State v. Samuel T. Cravens*, No. M2004-01710-CCA-R3-CD, slip op. at 7 (Tenn. Crim. App., Nashville, Aug. 25, 2005) (affirming sufficiency of the evidence to support the defendant's vehicular

-4-

assault and assault convictions because a rational jury could have concluded that the defendant's undisputed alcohol intoxication was the proximate cause of the reckless operation of his vehicle, swerving into the wrong lane of traffic, thereby causing the automobile accident and injuring three people); *cf. Potter*, 124 S.W.2d at 236 (refusing to extend criminal liability when jury determined that a driver who drifted into the wrong lane of traffic causing an automobile accident was not intoxicated). Accordingly, we affirm the defendant's aggravated assault convictions.

_____

JAMES CURWOOD WITT, JR., JUDGE